IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DANIELLE TAYLOR,          )
          )
    Plaintiff,        )
          )
    v.          )     Civil Action No. 1:22-cv-1153 (RDA/JFA)
          )
REVATURE, LLC,          )
          )
    Defendant.        )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Revature, LLC's ("Defendant") Initial Motion to Dismiss, Dkt. 10, Defendant's Motion to Dismiss the Interference Claim, Dkt. 27., Defendant's Motion to Strike, Dkt. 34, and Plaintiff's Motion to Strike Back, Dkt. 36. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motions to Dismiss, together with Defendant's Memoranda in Support (Dkt. 11; 28), Plaintiff's Oppositions (Dkt. Nos. 15; 31), Defendant's Replies (Dkt. Nos. 18; 32), and Plaintiff's Surresponse (Dkt. 20), the Court GRANTS the Motion to Dismiss and Defendant's Motion to Strike, and DENIES Plaintiff's Motion to Strike Back for the following reasons.

I. BACKGROUND[1]

A. Factual Background

Construing Plaintiff's *pro se* pleadings liberally, Plaintiff alleges six counts against Defendant, her former employer, pursuant to the Americans with Disabilities Act ("ADA") : 1) a

---

[1] For purposes of considering the instant Motion, the Court accepts all facts contained within Plaintiff's Complaint as true, as it must at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

discriminatory discharge, (2) a failure to accommodate,  (3) a retaliation, (4) a hostile environment,[2] (5) a confidentiality claim, and (6) an interference claim.  Dkt. Nos. 1; 15; 20.

Defendant is an information technology provider that staffs its clients with qualified software programmers.  Dkt. 11 at 1.  Employees at Defendant undergo a 10-12-week training period prior to being placed with one of Defendant's corporate clients.  If there are no client assignments available, employees are placed on the "Bench."  *Id.*  When employees are placed on the Bench, the employee remains on pay status, but is paid a lower rate.  *Id.* at 2.  Plaintiff completed her training and began working for Defendant on or about November 9, 2020.  *Id.*  In July 2021, Plaintiff was placed on the Bench.  Dkt. 1-1 at 1-2.

Plaintiff's claims mainly stem from her time on the Bench.  *Id.* at 8.  Shortly after being placed on the Bench, on July 30, 2021, Plaintiff emailed Defendant's human resources department explaining that she was "experiencing difficulty using vocal speech" and requested to use "text to talk instead of vocal speech."  *Id.* at 13.  That same day, Plaintiff received an email from HR saying that there was a notification of an accommodation request.  *Id.* at 10.  HR provided Plaintiff with an optional form, which Plaintiff completed and returned that same day.  *Id.*  However, Plaintiff claims that she did not receive a response from HR until August 13, 2021, despite her attempts to follow-up.  *Id.*  Plaintiff alleges that this delay forced her to use all of her accrued time off while she was waiting for HR to respond.  *Id.* at 10-11.

Plaintiff alleges her difficulties communicating with Defendant persisted throughout her time on the Bench.  While on the Bench, Plaintiff needed to perform certain Bench activities to

---

[2] Although Plaintiff labeled this claim as a claim for "unequal terms and conditions," Plaintiff clarified in her Opposition that she intended the claim to be one for hostile work environment.  Dkt. 15 at 20.  Given Plaintiff's *pro se* status, the Court construes her Complaint liberally and will analyze the claim as one for hostile work environment.

become eligible to do client interviews and presumably be moved off of the Bench. *Id.* at 8. Among those activities, Plaintiff had to pass a panel interview and have her portfolio pass an assessment. *Id.* Importantly, Plaintiff alleges that, while on the Bench, she was not eligible for payroll.[3] On August 9, 2021, Plaintiff alleges that Defendant changed the date and time of her panel interview in a hostile manner and rejected her portfolio the following day, though it had been approved weeks earlier. *Id.* at 11.

Plaintiff's attempts to schedule the required panel interview proved difficult as the panel interview continued to be pushed back, adding days where Plaintiff alleges that she was not eligible for pay. *Id.* at 9. Plaintiff alleges that, while discussing her accommodation request and medical documentation with Antony, an HR representative for Defendant, Antony asked Plaintiff "how long you are gonna have this problem." *Id.* at 9-10.

Plaintiff and Defendant continued to have conversations regarding the Bench activities. On or around August 31, 2021, Defendant instructed Plaintiff via email that she "must begin full participation in all Bench activities." *Id.* at 14. On or around September 7, 2021, Plaintiff had a conversation with one of Defendant's HR representatives, Sijuola, during which Plaintiff again requested an accommodation. *Id.* During that meeting, Sijuola directed Plaintiff to obtain a doctor's note for any accommodations that she was seeking. *Id.* Plaintiff alleges that Sijuola did not appear to have any interest in having a conversation about Plaintiff's accommodation. *Id.* at 15. The following day, Sijuola followed up on Plaintiff's accommodation request providing her with the medical certification and ADA forms necessary for Defendant to review and assess

---

[3] While Plaintiff alleges here that she was not eligible for payroll while on the Bench, elsewhere in her Complaint, she also states that, "[w]hile not with the client, I was paid minimum wage." Dkt. 1 at 25 of 31.

Plaintiff's accommodation request and instructed Plaintiff to "please resume participation in Bench activities." *Id.* at 15-16.  Plaintiff alleges she continued to request information regarding Bench expectations and sent "countless emails" regarding the panel interview, but that she did not hear back.  *Id.* at 16.  On or around September 17, 2021, Defendant emailed Plaintiff regarding its expectations for Plaintiff while she was on the Bench, including that she follow a schedule posted on Slack.[4]  *Id.* at 16-17.  Plaintiff alleges that she was upset by this email because she did not have the Slack link, did not have access to the panel interviews, and had not received portfolio approval, causing her to complain to Sijuola that she felt her rights had been violated.  *Id.* at 17.

On September 22, 2021 Sijuola inquired as to the status of Plaintiff's ADA forms and, on September 29, 2021, Sijuola sent an email regarding the "interactive discussion."  *Id.* at 20.  Around this time, Plaintiff explained she needed to address some of her concerns in order to "feel comfortable and have confidence the abuse would not continue," *id.* at 19, and inquired if she could provide the medical forms in person, *id.* at 28.  Later, on or around September 23, 2021, Plaintiff received a "Formal Notice of Performance Deficiency" informing her that if she continued not to participate in Bench activities that escalation would be initiated.  *Id.* at 17-18.  Plaintiff alleges that she explained to Defendant that she did not have access to Slack, *id.* at 18; however, Defendant believed that Plaintiff had access to Slack the entire time, *id.* at 19.  Plaintiff felt that she was being ignored and was having difficulty scheduling the necessary Bench activities.  *Id.* at 18.

After figuring out how to use Slack, Plaintiff alleges that for the next few weeks, several links for the activities were not posted on the Slack channel to which she had access.  *Id.* at 19-20.  Plaintiff then received an email stating that a panel interview would be conducted on September

---

[4] Slack is an internal messaging app.  Dkt. 11 at 15.

29.  *Id.* at 20.  To Plaintiff's surprise, the panel interview did not have a chat functionality.  *Id.* Ultimately, while Plaintiff complained to Sijuola that the lack of chat functionality at the panel felt "super hostile," Plaintiff received a notification that her panel interview was successful.  *Id.*

Plaintiff continued to communicate with Defendant regarding her accommodation request. However, on October 1, 2021, Defendant informed Plaintiff that, having not received any medical documentation, Defendant would not participate in further discussions regarding Plaintiff's accommodation request, but that they would "be more than happy to resume" when Plaintiff was ready to share the forms.  *Id.* at 21.  Defendant indicated to Plaintiff that, since Plaintiff did not send the necessary forms, the accommodation request was considered abandoned.  *Id.*

While on the Bench, Plaintiff participated in various panel interviews, which did not result in an offer.  On October 5, 2021, Plaintiff received a message from Defendant that she needed to repeat the prior panel interview because the audio was not clear.  *Id.*  When Plaintiff asked about whether there would be a chat functionality this time, Plaintiff got an immediate response asking to do the panel right away.  *Id.* at 21-22.  Plaintiff asserted that she needed reasonable notice, that the conversation with Defendant was needlessly difficult, that she sensed hostility, and that she was humiliated.  *Id.* at 22.  However, during the panel interview on October 7, Plaintiff was told that she had passed it.  *Id*.  Ultimately, around this time Plaintiff also alleges that she was informed that she was not selected for a position that she interviewed for in July 2021, though she thought the interview went well.  On October 14, Benjamin, an HR representative, discussed another employment opportunity with Plaintiff, but later told Plaintiff that she was not a good fit.  *Id.* at 24.

Defendant informed Plaintiff on or around November 1, 2021 that it had a potential placement for her in Florida.  *Id.* at 25-26.  Plaintiff declined the interview because the opportunity

was through a temp agency, was for an indefinite period, and thus, from her perspective, the job would be a regression in her employment. *Id.* at 26-27. Plaintiff alleges that, when she stated she was not interested in the Florida opportunity, Defendant requested a mutual release because it did not have any other positions for her skill level. *Id.* Plaintiff alleges that she requested additional training, which Defendant denied. *Id.* at 26. Plaintiff also alleges that Defendant purposely prevented her from working for clients such as Accenture and Fidelity. *Id.* at 1-3. Finally, on November 10, 2021, Defendant sent Plaintiff a termination letter. *Id.* at 26.

### B. Procedural Background

Plaintiff filed her Complaint in this Court on October 13, 2022. Dkt. 1. On January 27, 2023, Defendant filed the First Motion to Dismiss, Dkt. 10, along with a Memorandum in Support of the Motion to Dismiss, Dkt. 11. On February 17, 2023, Plaintiff filed her Opposition. Dkt. 15. On February 21, 2023, Plaintiff filed an Amended Complaint. Dkt. 16. On February 23, 2023, Defendant filed its Reply to Plaintiff's Opposition. Dkt. 18. On March 1, 2023, Plaintiff requested Leave to Add an Additional Claim, Dkt. 20, and was given permission by the Court to add a Sixth Claim of interference under the ADA on March 22, 2023, Dkt. 24. On March 20, 2023, the Court adopted Plaintiff's "request for extension of time" as a request to file a sur-reply. Dkt. 23. On April 3, 2023 Plaintiff filed her Surreply. Dkt. 25. On April 5, 2023, Defendants filed a Motion to Dismiss the Interference Claim. Dkt. 27. On April 18, 2023, Plaintiff filed an Opposition to Defendant's Motion to Dismiss the Interference Claim, Dkt. 31, and an Amendment to her Complaint, Dkt. 30. On April 24, 2023, Defendant filed its Reply to Plaintiff's Opposition on the Interference Claim. Dkt. 32. On April 27, 2023, Plaintiff filed another surreply. Dkt. 33. In response, Defendant filed a Motion to Strike on May 1, 2023, Dkt. 34, and Plaintiff filed a Motion to Strike Back on May 4, 2023, Dkt. 35.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). To be sure, "the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (*quoting Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Typically, "courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (*citing Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)). However, a court may consider any exhibits attached to a complaint that are incorporated therein by reference. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes her filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of her obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into her advocate. *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

III. ANALYSIS

Before considering the merits of Plaintiff's allegations, this Court begins its analysis with a determination of whether Plaintiff may be permitted to file her Purported Amendment to assert a seventh claim, whether Plaintiff may be permitted to file her additional surreply, and whether to strike Defendant's Motion to Dismiss the Interference Claim and Defendant's Motion to Strike.

A.  Motions to Strike

1. Defendant's Motion to Strike

 The Federal Rules of Civil Procedure provide that a party may amend her complaint as a matter of course within 21 days of service or within 21 days after responsive pleading or a Rule 12(b) motion.  Fed. R. Civ. P. 15(a)(1).  When a matter of course amendment is unavailable, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  A court will freely give leave "when justice so requires," *id.* and denial of leave should only occur "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986).

Defendants argue that Plaintiff's additional amendment to add a seventh claim should be stricken, because she failed to obtain Defendant's consent and the Court did not grant leave to amend.  Plaintiff has already previously made a "matter of course" amendment to her Complaint. Dkt. 24.  Thus, to further amend her pleadings, Plaintiff must either receive consent from Defendant or receive leave of the Court.  Defendant did not consent to Plaintiff's new amendment, and in fact opposes it.  Dkt. 34 at 3-4.  Further, this Court finds that Plaintiff has not sought leave to amend her Complaint as required by Federal Rule of Civil Procedure 15(a).  As Plaintiff has not

8

received leave of Court to file an amendment and Defendant did not consent, Plaintiff's Amendment is improper and will be stricken.

Plaintiff also did not obtain leave of Court to file her second surreply[5] as required by Local Rule 7(F)(1).  As such, the Court grants Defendant's Motion to strike the second surreply.  *See, e.g.*, *Jones v. Marriott Int'l*, LLC, 2021 WL 5039249, at *6 (E.D. Va. 2021) (striking surreply where *pro se* plaintiff filed a surreply without leave of court).  In sum, Defendant's Motion to Strike[6] is granted and Plaintiff's Amendment (Dkt. 30) and surreply (Dkt. 33) will be stricken.

### 2. Plaintiff's Motion to Strike

Under Rule 12(f), "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[M]otions to strike pursuant to Rule 12(f) are directed only to pleadings."  *Gordon v. TBC Retail Grp., Inc.*, No. 2:14-cv-3365-DCN, 2020 WL 1703912, at *2 (D.S.C. April 8, 2020).  "According to Rule 7, a document is a pleading only if it corresponds in one of the following categories: complaint, answer to complaint, answer to a counterclaim, answer to a crossclaim, third-party complaint, answer to a third-party complaint, and a reply to an answer."  *Id.* at 2 (citing Fed. R. Civ. P. 7(a)).  A motion to strike should clearly show that the pleading or portion of the pleading that the motion is directed

---

[5] In deference to Plaintiff's *pro se* status, the Court granted Plaintiff's prior request to file a surreply.  Dkt. 23.

[6] Plaintiff is correct that Defendant's Motion to Strike has failed to comply with the requirements of this Court's local civil rules, which require that that all motions filed against *pro se* parties "attach to or include at the foot of the motion a warning consistent with the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975)."  E.D. Va. Local Civ. R. 7(K).  While this failure would normally deem the Motion withdrawn, this Court recognizes that Plaintiff filed a Motion to Strike Back—effectively achieving the purpose of a *Roseboro* notice.  As such, the Motion will not be deemed withdrawn and the Court will grant the Motion with the caveat that defense counsel pay careful attention to this Court's local rules in all future filings before this Court.

to is "outside the issues in the case and is prejudicial to the objecting party."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383 (3d ed. 1995).

Here, Plaintiff asks to strike Defendant's Motion to Dismiss the Interference Claim and Motion to Strike, which are not pleadings.  Further, even if a motion to strike could be addressed to a motion to dismiss or motion to strike, Plaintiff has not made a showing that the facts or issues raised in those motions are "outside the issues in the case, prejudicial to Plaintiff, or otherwise inappropriate."  *Hamilton v. Army Bd. for Corr.*, No. CV 2:21-195-BHH-MHC, 2021 WL 9553007, at *8 (D.S.C. Dec. 7, 2021), report and recommendation adopted, No. CV 2:21-195-BHH, 2022 WL 4481468 (D.S.C. Sept. 27, 2022), *aff'd*, No. 22-2121, 2023 WL 3581703 (4th Cir. May 22, 2023).  Therefore, the Court will deny Plaintiff's Motion to Strike Back (Dkt. 36).

### B. Alleging a Case under the ADA

#### 1. Whether Plaintiff is a Qualified Individual with A Disability

As a preliminary matter, for an ADA claim to survive a motion to dismiss, Plaintiff must adequately allege that she is a "qualified individual[7] with a disability."  *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 (4th Cir. 2004).  The ADA defines a disability as (1) "a physical or mental impairment that substantially limits one or more major life activities" (actual disability); (2) "a record of such an impairment" (record-of disability); *or* (3) "being regarded as having such an impairment" (regarded-as disability).  *Schneider v. County of Fairfax*, No. 1:22-cv-871(LMB/WEF), 2023 WL 2333305, at *4 (E.D. Va. Mar. 2, 2023).  Although Plaintiff "does

---

[7] Neither party raises the issue of whether Plaintiff has properly pleaded that she is a qualified individual within the meaning of the ADA.  However, Plaintiff does not "articulate the essential functions of [her] job" nor does she "allege any facts demonstrating that [she] could perform the essential functions of [her] position with or without reasonable accommodation."  *Chisholm v. Mountaire Farms of North Carolina Corp.*, 629 F. Supp. 3d 368, 375 (M.D.N.C. 2022).

not have to provide extensive detail as to [her] medical condition," she must "plead a disability claim 'above a speculative level.'" *Hice v. Mazzella Lifting Technologies, Inc.*, 589 F. Supp. 3d 539, 547 (E.D. Va. 2022).

As a threshold matter, Plaintiff has failed to allege sufficient facts to establish that she has an actual disability. An actual disability is defined by the ADA as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). When analyzing whether a plaintiff has pleaded a disability, courts routinely analyze whether a plaintiff has alleged a physical or mental impairment *and* whether that impairment limits one or more major life activities. *See, e.g.*, *Hice*, 589 F. Supp. 3d at 548 (analyzing whether a plaintiff adequately alleged not only that he suffered from degenerative arthritis, but also whether the arthritis actually impaired one or more major life activity). Plaintiff alleges in her Complaint that her disability is "communication," which does refer to a major life activity, but that does not adequately describe or specify any physical or mental impairment. Dkt. 1 at 4. Further, in Plaintiff's EEOC Charge that was attached to her Complaint,[8] Plaintiff stated that she had a "need to use written word for learning and communication purposes," Dkt. 1-1 at 8, but Plaintiff does not allege any medical condition that limits her ability to communicate. In fact, her Complaint is devoid of any reference to a particular disability or disabilities. Thus, Plaintiff has failed to allege sufficient facts to establish that any issues she has with "communication" qualify as a disability under the ADA, which is grounds for dismissal. *See Smith v. Virginia Dep't of Agric. & Consumer Servs.*, No. 3:12cv77, 2012 WL 2401749, at *9 (E.D. Va. June 24, 2012) ("[Plaintiff] did not identify the mental condition and made no allegations as to the extent of her mental condition or

---

[8] Plaintiff attached her EEOC Charge to her Complaint and has incorporated it by reference, so the Court may consider it. *Fayetteville Investors*, 936 F.2d at 1465.

the effect it has on major life activities."); *Bakra v. RST Mktg.*, 6:19-cv-00033, 2019 WL 3459251, at *2 (W.D. Va. July 31, 2019) ("Here, Plaintiff alleges he has a disability but does not name the disability . . . [t]he Complaint on its face is devoid of any reference to the particular disability or disabilities that form the basis for any alleged discrimination . . . ."); *Coleman v. Ford Motor Co.*, No. 3:04CV7590, 2005 WL 1459549, at *2 (N.D. Ohio June 17, 2005) (dismissing a disability discrimination complaint because "Plaintiff's complaint failed to specify the particular impairment"); *Thomas v. Dana Com. Vehicle Prods., LLC*, No. 4:13CV-00041-JHM, 2014 WL 1329948, at *4 (W.D. Ky. April 1, 2014) (dismissing a complaint because the plaintiff failed to identify his disability even in general terms).

Plaintiff asserts in her Opposition that her ADA claims should still survive because she adequately pleaded that she had a "record of" a disability and that she was "regarded as" disabled. Dkt. 15 at 4-5.  To demonstrate a record-of disability, Plaintiff would need to allege that she has "a history of, or has been misclassified as having, a physical impairment that substantially limits one or more major life activities."  *Leggo v. M.C. Dean, Inc.*, 1:22-cv-374, 2023 WL 1822383, at *4 (E.D. Va. 2023).  To plead a regarded-as disability under the ADA, Plaintiff must allege either "(1) a covered entity mistakenly believes that [she] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities."  *Bateman v. American Airlines, Inc.*, 614 F. Supp. 2d 660, 671 (E.D. Va. 2009).  The Fourth Circuit has explained that a "regarded as" claim for disability discrimination requires that an employer "entertain a misperception" and "'focuses on the reactions and perceptions of the [employer's] decisionmakers' who worked with the employee.  *Wilson v. Phoenix Specialty Mfg. Co., Inc.*, 513

F.3d 378, 385 (4th Cir. 2008) (quoting *Runnebaum v. NationsBank of Md.*, N.A., 123 F.3d 156, 172-73 (4th Cir. 1997)).

Plaintiff has failed to allege sufficient facts to support that she had a record of disability. As discussed *supra*, Plaintiff has failed to allege any facts identifying a physical or mental impairment in her Complaint or provide any medical documentation of a physical or mental impairment. Thus, there are not sufficient facts to plausibly support that Plaintiff had a record of disability.

Plaintiff's "regarded as" claim likewise fails. Plaintiff's Complaint does not allege that Defendant viewed Plaintiff as unable to work in the information technology industry generally. *Akbar-Hussain v. ACCA, Inc.*, No. 1:16CV1323 (JCC/IDD), 2017 WL 176596, at *4 (E.D. Va. Jan. 17, 2017). Additionally, Plaintiff's Complaint does not allege that Defendant regarded Plaintiff as "substantially limited in her ability to perform her specific job" due to her need to use written speech over verbal communication. *Id.* To support her arguments, Plaintiff points to multiple conversations that she had with Defendant in which she discussed her request for accommodations and Defendant in turn sought a doctor's certification. Dkt. 15 at 4. However, the allegation that Defendant engaged in discussions regarding Plaintiff's claimed medical challenges does not lead to the plausible inference that Defendant perceived her as disabled. Rather, it tends to support the inference that Defendant attempted to appropriately engage in the interactive process as required by the ADA. Put simply, Plaintiff's request to use written word instead of vocal speech did not put Defendant on notice of whether she had a physical or mental impairment or give it reason to perceive her as disabled. While Plaintiff does allege that Antony asked her "how long you are gonna have this problem" when asking about Plaintiff's medical documentation, Plaintiff does not allege any facts to help establish that Defendant believed her

alleged disability prevented her from working.  Dkt. 1-1 at 9-10.  Thus, Plaintiff has not alleged sufficient facts to plead she has a disability under the ADA.

Given that Plaintiff has failed to allege sufficient facts that she is a qualified individual with a disability under the ADA, the Court will dismiss Count I, Plaintiff's discriminatory discharge claim.  The Court will also dismiss Counts II (failure to accommodate claim[9]), and IV (hostile work environment claim[10]), as the "former requires the Plaintiff to establish that she is within the ADA's protected class and the latter requires her to show that she had a disability, both of which she has failed to do." *Akbar*-Hussain, 2017 WL 176596, at *4 (E.D. Va. Jan. 17, 2017) (dismissing ADA claims where Plaintiff failed to allege sufficient facts to plead a disability).

## C. Retaliation Claim (Count III)

Defendant also moves to dismiss Plaintiff's retaliation claims on two grounds.  First, Defendant argues that Plaintiff did not exhaust her administrative remedies because she did not select the retaliation box on her EEOC Charge and did not mention retaliation in her EEOC narrative.  Dkt. 11 at 11-12.  Second, Defendant argues that, even if Plaintiff did preserve her retaliation claim in her Charge, the claim should still be dismissed because Plaintiff has failed to

---

[9] To survive a motion to dismiss for a failure to accommodate claim under the ADA, a plaintiff must sufficiently allege "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

[10] To survive a motion to dismiss for a hostile work environment claim under the ADA, a plaintiff must sufficiently allege "(1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Coleman v. Kettler Mgmt.,* No. 1:22-cv-84(RDA/JFA), 2022 WL 17585780, at *6 (E.D. Va. 2022) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001)).

state a claim. *Id.* Plaintiff argues that although she did not select the retaliation box on the Charge, all the facts supporting her retaliation claim were listed in the EEOC Charge, so the Court should deem her retaliation claim preserved and find that she adequately stated a claim. Dkt. 15 at 14-15.

### 1. Failure to Exhaust Remedies

Prior to initiating an ADA claim in federal court, a plaintiff "must exhaust [her] administrative remedies by filing a charge with the EEOC." *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012). "[T]he scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Id.* (cleaned up) (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)). "As such, a charge may limit the scope of litigation, and allegations that fall outside the scope of the EEOC charge will be barred." *Sullivan v. Perdue Farms, Inc.*, 133 F. Supp. 3d 828, 834 (E.D. Va. 2015). A plaintiff is barred from bringing a claim for retaliation in court when her charge alleges discrimination but fails to check the box or raise a claim for retaliation in the narrative. *Potter v. SunTrust Bank*, No. 3:14-CV-436, 2014 WL 5410634, at *6 (E.D. Va. 2014). "Documents filed by an employee with the EEOC," however, "should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008).

Here, Plaintiff failed to exhaust her retaliation claim. In her EEOC Charge, Plaintiff failed to select the box for retaliation. Additionally, in the narrative section of Plaintiff's EEOC charge, she described her claims specifically as "hostile environment and failure to provide a reasonable accommodation," but did not mention retaliation. Dkt. 1-1 at 7. Thus, the Court finds Plaintiff's EEOC Charge did not put Defendant "on notice of" Plaintiff's ADA retaliation claim as it did not contain allegations describing retaliation. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

Thus, Plaintiff failed to exhaust her administrative remedies as to her ADA retaliation claim and lacks standing to bring a retaliation claim under the ADA.  Although the Court could dismiss Plaintiff's ADA retaliation claim based on this analytical framework alone, the Court will address why the retaliation claim fails on the merits.

### 2. Failure to State a Claim

In her Complaint, Plaintiff alleges that Defendant retaliated against her in six separate instances after complaining about discrimination.  Defendant asserts that Plaintiff's retaliation claim must fail because she did not adequately plead a causal connection between Plaintiff's request for accommodations and any adverse action.  Dkt. 11 at 12.

To state a claim for retaliation under the ADA, a plaintiff must plead sufficient facts to plausibly show, "(1) that they engaged in protected conduct; (2) suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action." *Jones v. HCA*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014).  An "adverse action" in the context of a retaliation claim is one that is " 'materially adverse' meaning that the plaintiff must show that the action 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Laird v. Fairfax Cnty., Virginia*, 978 F.3d 887, 893 (4th Cir. 2020) (internal citation omitted). However, the action must have "some significant detrimental effect" and requires more than a situation that is "less appealing" to the Plaintiff.  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007).   In order to plead causation, a plaintiff must allege sufficient facts to show that the protected activity was the but-for cause of the adverse action. *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 234 (4th Cir. 2016).

Though not clearly stated in Plaintiff's Complaint, Plaintiff appears to allege that her protected action was her request for accommodations on July 30, 2021.  Dkt. 1-1 at 10.  Further Plaintiff alleges the following facts as instances of adverse actions:

- Reduced hours because I complained about discrimination.
- [Defendant] choosing not to assign me to Accenture.
- [Defendant] choosing not to assign me to Fidelity and refusing to help me prepare for the interview where the job description specifically referenced varying styles of communication.
- Manager rejecting my portfolio for approval after complaining about discrimination.
- [Defendant] only willing offer me an interview with a temp agency after complaining about discrimination, when before the opportunities were with companies looking to hire permanent employees.
- Termination because I refused to accept the discrimination.

*Id.* at 1-3.  Defendant does not dispute that Plaintiff's request for accommodations was a protected activity, so the Court will focus on whether Plaintiff has alleged any adverse action and whether she has alleged a causal connection between Plaintiff's protected activity and the adverse action.

First, the Court must clarify which of Plaintiff's allegations do not constitute adverse actions.  Plaintiff's allegation regarding denial of her portfolio fails, as Plaintiff does not allege it had a significant detrimental effect on Plaintiff's employment.  *Leggo*, 2023 WL 1822383, at *5 (E.D. Va. Feb. 7, 2023) (finding no adverse action where plaintiff failed to allege that the decline in his duties and opportunities had any negative impact on his employment).  Similarly, Plaintiff's claim that Defendant attempted to place her with a "temp agency" in Florida, rather than a permanent position with another company does not constitute an adverse action.  *Id.* (holding a plaintiff's "mere dislike for [a] project and complaints about travel convenience are insufficient to support that he suffered adverse action").  Notably, given Plaintiff's Bench status at the time of the job offer, assigning Plaintiff to a temp agency would have increased Plaintiff's pay and hours, making it difficult to render the job offer as an adverse action.  *See* Dkt. 1-1 at 25 (acknowledging

that Defendant paid employees a higher hourly rate when they were assigned to a client rather than on the Bench).

The Court next considers Plaintiff's remaining allegations.  Plaintiff's allegation that she suffered reduced hours and thus pay, does constitute an adverse action, but the claim fails because Plaintiff does not plausibly allege her accommodation request was the "but for" cause of the hour reduction.  As stated in her Complaint, Plaintiff's reduced hours were a consequence of being placed on the Bench.  Dkt. 1-1 at 8-9.  Plaintiff alleges that she received the "Transition to the Bench Memo" on or around July 26, 2021.  *Id.*  However, Plaintiff states in her Complaint that she did not submit her accommodation request until July 30, 2021.  *Id.* at 10.  Plaintiff, therefore, cannot claim that her placement on the Bench and the corresponding reduction in hours was caused by her accommodation request, when her placement on the Bench occurred prior to her request.  *See Byers v. HSBC Fin. Corp.*, 416 F. Supp. 2d 424, 438 (E.D. Va. 2006) (holding that a plaintiff must show that the adverse action "took place *after* the protected activity and because of the protected activity" (emphasis added)).

Similarly, while Plaintiff's termination surely constitutes an adverse action, she failed to sufficiently plead a causal connection between her July 2021 accommodation request and her termination in November 2021.  *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021); *Dungey v. Culmen Int'l LLC*, No. 121CV01027RDAJFA, 2022 WL 4357443, at *6 (E.D. Va. 2022).  While there is no bright-line rule, "close temporal proximity between disability disclosure and the adverse action draws a reasonable inference of discrimination." *Dungey*, 2022 WL 4357443, at *6 (E.D. Va. Sept. 20, 2022).  Courts within the Fourth Circuit have held that "a lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation 'is too long to establish a causal connection by temporary proximity alone.'"

18

*Roberts*, 998 F.3d at 127 (4th Cir. 2021) (citing *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233); *see also Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (holding absent a causal connection "a lapse of two months between the protected activity and the adverse action is sufficiently long so as to weaken significantly the inference of causation") (internal citations and quotation marks omitted); *Roberts*, 998 F.3d at 127 (concluding a three-month period between the protected activity and adverse action did not support finding a causal link where there was an absence of any concrete, nonspeculative evidence.)  Though proving causation is not an overwhelming burden, the minimal allegations here, even when taken in the light most favorable to the Plaintiff still do not support causation regarding her termination. Defendant notified Plaintiff that her accommodation request was deemed abandoned as of October 1, 2023, because she did not complete the requested medical forms.  Dkt. 1-1 at 21.  Defendant argues that since the original request was abandoned, it could not possibly have caused her termination.  This Court is not persuaded by that argument.  However, Plaintiff acknowledges in her Complaint that she was terminated after she had been on the Bench for three months *and* after she declined the employment opportunity in Florida.  Dkt. 1-1 at 25-26.  Without any contrary factual allegations supporting retaliatory animus, the lack of temporal proximity from the initial accommodation request to her termination undercuts what was already a speculative causal connection.  Accordingly, the Court concludes that Plaintiff has not pleaded sufficient facts that she was terminated in retaliation for her accommodation request.

Finally, Plaintiff alleges in a conclusory fashion that Defendant prevented her from working for Accenture or Fidelity.  Dkt. Nos. 11 at 13-14; 15 at 16.  There are no factual allegations in the Complaint regarding these alleged opportunities, so there is no way for the Court to determine that Plaintiff did not receive these opportunities because of her accommodation request.

As Plaintiff has failed to plausibly allege the necessary elements for a claim of retaliation, Count III will be dismissed.

### D. Confidentiality Claim (Count V)

Plaintiff appears to bring a "confidentiality claim" in violation of 42 U.S.C. § 12112(d)(4)(C).  42 U.S.C. § 12112(d)(4)(C) requires an employer to protect the confidentiality of medical records acquired from "voluntary medical examinations which are part of an employee health program available to employees at that work site or that an employer obtains from inquiries into the ability of an employee to perform job-related functions." *Rodriguez v. City of Hopewell Sch. Bd.*, 2020 WL 4323219, at *9 (E.D. Va. 2020).  The cited provision does not regulate medical information provided in seeking reasonable accommodations.  *Id.*

Plaintiff does not assert any additional factual allegations in support of her confidentiality claim.  She has not pleaded that she provided any of the kinds of medical information to Defendant that is covered by the statute.  Plaintiff also does not allege that Defendant disclosed any such information.  Plaintiff indicates in her Complaint that Defendant asked Plaintiff to provide medical documentation, but she does not allege that she provided Defendant with any medical documentation.  Accordingly, the Court will dismiss Count V.

### E. Interference Claim (Count VI)

Finally, Plaintiff brings an interference claim based on Defendant's written policy.  Dkt. Nos. 20, 24.  While Plaintiff's interference claim is difficult to decipher, in essence, Plaintiff claims that the language of Defendant's policy violated the ADA.  Defendant argues that its written policy is compliant with the ADA and does not in any way "limit[] the employee's right to invoke ADA protections."  Dkt. 28 at 4.

To establish an interference claim under the ADA, an employee must demonstrate "(1) she engaged in an activity that is statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate." *Sowers v. Bassett Furniture Indus., Inc.*, No. 4:19CV00039, 2021 WL 276169, at *9 (W.D. Va. Jan. 27, 2021) (citing *Frakes v. Peoria Sch. Dist.* No. 150, 872 F.3d 545, 550–51 (7th Cir. 2017).   Interference claims under the ADA are relatively rare. *See Sowers*, 2021 WL 276169, at *9 (W.D. Va. Jan. 27, 2021) (highlighting "the dearth of appellate cases outlining its elements").

Plaintiff has failed to adequately plead her interference claim.   Plaintiff alleges that Defendant's written policy dissuades employees from participating in the ADA process because it says the company "does not have to give you an accommodation[,]" which she found intimidating. Dkt. 1-1 at 8.  The section of Defendant's policy that Plaintiff appears to take issue with is written as follows:

> Any employee or applicant, who believes he or she suffers from a condition or impairment that rises to the level of a disability and that may preclude the employee from performing the functions of the position, should contact the Human Resources/Department to discuss what accommodations, if any, will allow the employee or applicant to perform the essential functions of the position. The Human Resources Department may ask for information from your health care provider(s) regarding the nature of your impairment, the nature of your limitations, and the anticipated duration, or take other steps necessary to help us determine viable options for reasonable accommodation. We will then work with you to determine whether your disability can be reasonably accommodated, and if it can be accommodated, we will explore alternatives with you and endeavor to implement a mutually agreeable accommodation.

> Reasonable accommodation may take many forms, including leave, and it will vary from one employee to another.  Please note that, the Company does not necessarily have to provide the exact accommodation you want and does not have to provide an accommodation if doing so would cause undue hardship to the Company.

Dkt. 28-1 at 4-5 (Defendant's General Employment Policies).  Plaintiff relies on *Sowers* to support

her position.   In *Sowers*, the federal court in the Western District of Virginia allowed an

interference claim challenging an employer's policy to proceed past summary judgment where the

policy was interpreted to mean the employer would not consider performing an "individualized

assessment of each employee and his requested accommodation."  *Sowers*, 2021 WL 276169, at

\*10 (W.D. Va. Jan. 27, 2021).   Since the ADA requires an individualized assessment, the court in

*Sowers* determined the policy interfered with the ADA.  *Id.* at 10-11.   Unlike the policy in *Sowers*,

Defendant's policy clearly states that the Defendant will perform an individualized assessment for

each employee.   Dkt. 28-1 at 4-5.   By noting that an employee may not get their precise

accommodation even after such an evaluation, Defendant is merely explaining additional

mechanics of the ADA rather than interfering with them.  *See e.g.*, *Walter v. United Airlines, Inc.*,

232 F.3d 892 (4th Cir. 2000) (table decision) (holding that "the ADA does not require an employer

to provide the specific accommodation requested by the disabled employee, or even to provide the

best accommodation, so long as the accommodation provided to the disabled employee is

reasonable"); *Laird*, 978 F.3d at 890, n.1 (citing 42 U.S.C. § 12112(b)(5)(A)) ("the ADA does not

require an employer to provide [a reasonable] accommodation when doing so would impose an

undue hardship on the operation of its business").   As Defendant's accommodation policy is not

contrary to the ADA, an interference claim based on that policy cannot proceed.   Thus, this Court

will dismiss Count VI.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Strike (Dkt.

34) is GRANTED; and it is

22

FURTHER ORDERED that Defendant's Motions to Dismiss (Dkt. Nos. 10 and 27) are GRANTED; and it is

FURTHER ORDERED that Plaintiff's Complaint is dismissed WITHOUT PREJUDICE; and it is

FURTHER ORDERED that if Plaintiff so chooses, she may file a Motion to Amend, with an attached proposed Amended Complaint providing a chronological, plain statement of the facts in compliance with Federal Rule of Civil Procedure 8, within 30 days of this Order; and it is

FURTHER ORDERED that Plaintiff's Motion to Strike Back (Dkt. 36) is DENIED.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record for Defendants and to Plaintiff, who is proceeding *pro se*.

It is SO ORDERED.

Alexandria, Virginia
September 28, 2023

/s/

Rossie D. Alston, Jr.
United States District Judge