FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2023 NOV 20 ⊃ 1: 38

DANIELLE TAYLOR                )
                               )
        *Plaintiff,*           )
                               )
                               )        Case No. 1:22-cv-1153
v.                             )
                               )
REVATURE LLC                   )
                               )
        *Defendant*            )
_____ )

RESPONSE TO DEFENDANT"S OPPOSITION
INTRODUCTION

Judge Rossie D. Alston, Jr's order from September 28 said it was "... ORDERED that if

Plaintiff so chooses, she may file a Motion to Amend, with an attached proposed Amended

Complaint providing a chronological, plain statement of the facts in compliance with Federal

Rule of Civil Procedure 8…" Plaintiff understood this as an order to file a motion with one item

only- the proposed amended complaint. F.R.C.P 8, the rule notated in the order mentions nothing

about briefs. Further, Local Civil Rule 7 F:1 covers scenarios when a brief is not required, that is

when the party is "otherwise directed by the Court ". This is why Plaintiff did not file a brief with

the motion.

Very respectfully, Plaintiff notices Defendant's footnote on *Britt v. DeJoy*, 45 F.4th 790,

796 (4th Cir. 2022). The Britt Court explained "[a]ny and all intent regarding finality vel non is

communicated through the presence or lack of permission to amend the complaint.." Defendant's

position that a motion to vacate or reopen may be needed here is nonsensical. The *Britt* Court

was clear about the mention of amendment or not being determinative on the need for those motions.[1]

Here, Judge Rossie D. Alston, Jr clearly invited Plaintiff to amend the Complaint in the order from September 28, 2023. "FURTHER ORDERED that if Plaintiff so chooses, she may file a Motion to Amend, with an attached proposed Amended Complaint providing a chronological, plain statement of the facts in compliance with Federal Rule of Civil Procedure 8…", even providing the number of days specification. The rule promulgated by the *Britt* Court clearly doesn't apply to this case.

## ARGUMENT

Plaintiff's proposed amended complaint establishes the (1) exhaustion of administrative remedies for her retaliation and interference claims; and (2) the sufficient pleading of facts to establish the existence of a disability for ADA definitions.

### 1. Plaintiff Exhausted Administrative Remedies

### This case is not like the *Potter* case.

The *Potter* case, as a recent affirmation of the check box rule[2] is so different from this case. The Potter case involved a Plaintiff who provided extremely limited information about what happened.[3]

---

[1] However, Plaintiff thanks Defendant for bringing this case to her attention. Plaintiff also thanks the Court for explicitly saying she could amend and providing a time frame. I wonder if a comment could be added on this subject matter, to be like Roseboro rule, to be provided as some sort of warning to the Pro Se Plaintiffs when a case is dismissed without prejudice; just because it's a procedural nuance that might cause some people to make a mistake that is not really related to the claim(s) themselves.

[2] Generally, the checkbox rule is entirely removed from the reality of bringing a charge without representation, especially because of the unique and dual nature of retaliation, as both a protected trait and a legal claim respectively. Attorneys and judges should take issue with the checkbox rule as well because the checkbox is listed with protected traits, not claims of action. It's obfuscatory and inappropriately ambiguous. A lot of people wouldn't even understand what is meant by retaliation is unique in its dual nature as a protected trait and cause of action, respectively. The Court should say something to the EEOC, seriously... I could write an entire brief on this point alone but it's a digression here.

[3] Moreover, the Potter Plaintiff unfortunately failed to consider that people with European ancestry could be from Nigeria (i.e. where they themselves were born), and could have any pigmentation of skin.

The main thing the Potter Court looked at, which is what this Court should similarly look at, was the *contents* of the narrative statement. The Potter Court specifically quoted the Potter Plaintiff: "The basis of my termination was considered politically incorrect to ask someone to speak English. More specifically, I politely asked three other consultants that were seated right next to me to kindly converse in English (as much as possible)." There's a couple problems with this.

Potter did assert he was terminated because he asked his colleagues to speak English but it stops there. Potter didn't allege the employees were using the different language for work they all shared.  For all we know, Potter was simply complaining about people speaking another language in conversations that had nothing to do with work or with him.

Perhaps if Potter pled that the employees were working on a project together but all talking in a language he did not understand, even though everyone did in fact speak English,  and that's why he repeatedly asked them to speak English, because it was the only language they all shared, and then he was immediately fired and physically removed… Well, I think this would have been a different case at least for the nationality trait; but nothing like that was in the Potter Plaintiff's narrative and his comments made him sound racist himself.

The main point here is that the Potter Plaintiff's failure was about a lot more than a checkbox not being checked.

a. ***Focusing only on Plaintiff's narrative's titles is improperly reductive of the narrative's content.***

Very respectfully, Plaintiff asks the Court to consider how focusing only on the narrative's titles is improperly reductive. Plaintiff's proposed amended Complaint added important context about the cover sheet completed by the EEOC employee:

"In 2022, Plaintiff filed a complaint with the EEOC who opened an investigation. However, Plaintiff did not prepare the charge's cover sheet where the check boxes are marked. After reviewing the cover sheet that was prepared by the EEOC member, Plaintiff told the EEOC representative that there was more to the complaint and the EEOC representative responded by telling Plaintiff not to worry because we could add more at a later time, further explaining this form was just to get things started. Plaintiff provided EEOC with documents that specifically articulated Plaintiff had experienced what she believed was "retaliation" and articulated the same for "interference". Plaintiff also asked the EEOC representative to review everything she provided and ask her questions based on the written material but the EEOC representative never asked any questions." (Plaintiff's Proposed Amended Complaint).

Judge Rossie D. Alston, Jr's order from September 28,2023, cited a case from the United States Supreme Court: *Federal Exp. Corp. v. Holowecki,* 552 U.S. 389 (2008) where SCOTUS explained:

"Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies. **Construing ambiguities against the drafter ….would undermine the remedial scheme Congress adopted."** (Cleaned up).

Plaintiff's proposed amended Complaint provides important context behind the EEOC cover sheet. The foregoing facts from the proposed amended complaint should obliterate any negative inference due to the absence of a check mark.

b. The claims in Plaintiff's judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation because it involves the same time frames, actors, and described conduct.

The Fourth Circuit has explained "[s]o long as "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," she "may advance such claims in her subsequent civil suit."" *Sydnor v. Fairfax County,* Va., 681 F. 3d 591 - Court of Appeals,( 4th Circuit 2012).

Defendant was put on notice of all claims when it received the EEOC Charge because of the contents in the narrative. The determinative information on preservation is everything in the

narrative - The narrative's contents preserve the claims because it involves the same time frames, actors, and described conduct present in the narrative. *Id.*

I.    Retaliation for complaining about discrimination resulting in deduction of compensation October 1, 2021.

In Plaintiff's EEOC narrative, Plaintiff discusses telling the ADA contact employee that she felt her "rights were being violated", **literally days before Plaintiff's pay was reduced,** on Page 24:

> "September 19, September 20...I forwarded the Bench Guidelines message to Sijuola explaining that I felt my rights were being violated and that the email didn't contain any information on how to access slack"

> "On September 23, I get an email from Julie with the subject of Formal Notice of Performance Deficiency. The email stated the following: "Good afternoon, Danielle. After your discussion with HR on 9/7/21, you were instructed to resume Bench activities in full. After over a week of continued nonparticipation, on 9/17/21 you were notified again by Antony of the expectations regarding Bench participation. At this time, still still have not participated in any of the required activities for your time on Bench. This is a formal notice that you are to begin Bench activities participation in full no later than tomorrow of escalation will be initiated". I tried to explain, I guess very foolishly so, that 1. September 17, 2021 was the first time I'd received anything about bench activities beyond the panel and portfolio. I'd been writing to them for months at this point with no answer. The panel still wasn't scheduled. I'd communicated to HR that I was working on a certificate. I wrote to HR about not having access to the slack link. "

Page 26 of the EEOC narrative:
> "Still on September 23, I wrote to Sijuola about the forms explaining that I would need HR to at least address some of my concerns in order to feel comfortable and have confidence the abuse would not continue."

> "On September 24,2021 I joined the scheduled activity of "presentation of the week" and it was nothing to do with job related function to Salesforce, there was literally a five minute presentation on a technical topic, and the rest of the time was a discussion about people's personal families, their pets, and personal holidays. I was wondering to myself why is it okay for them to send me a performance deficiency when I was actually working on work related things and I'd even communicated that to HR"

Last paragraph on Page 26 EEOC Narrative but continued to Page 27, Plaintiff explaining that
even after she got the slack links, she still didn't have access to the links she needed for the
so-called activities:

> "To make matters worse, for the next few weeks, several links for the activities weren't
> even posted in the channel that I was given access to. Several 'activity links' were often
> shared elsewhere, either on a different slack channel, one that I didn't have access to, or
> somewhere else that I didn't have access to. "

> "At 6:00pm on September 29, I get an email from Sijuola....I responded, I guess very
> foolishly and definitely extremely distressed, explaining I'd responded already a week
> prior, asking why my timesheet hadn't been approved..."

Page 28 of EEOC narrative, referencing the email with Sijuola about bringing ADA forms in
person, **Plaintiff again complains about her rights being violated to HR and then
immediately her hours are reduced,** writes:

> ..."shared that I wasn;t comfortable sharing more information unless my concerns about
> the hostility from management were addressed"
> "October 1, my time sheet was rejected and I was instructed to log zero hours for Friday
> 9/17, 9/20, 9/21, 9/22. "

Page 29, 30, and 31 of EEOC Narrative, Plaintiff talks about the pay reduction reason given
justification as not the real reason.

> "So, the whole telling me not to log hours because I missed work responsibilities, well I
> wouldn't have even been participating in those activities. Activities were not mandatory
> so long as a sent a message saying my focus on the certification, so that is another
> example of how cutting of hours was pretextual"

In Plaintiff's proposed amended Complaint Plaintiff explains this claim as the following:

> "On or around September 23, 2021, Plaintiff received a performance deficiency notice.
> The notice instructed her to participate or have a pay reduction. On September 23, 201
> Plaintiff wrote to both management and HR explaining that she felt the performance
> notice was simply to intimidate or harass her because of the disability, expressing a lot of
> frustration. She explained that it was crazy-making behavior to concurrently (1) not
> answer her communications about participation and (2) tell her that she isn't participating.

6

At this point. Defendant's employees finally answered Plaintiff's communications about how to access the portal and Plaintiff connected to the portal where the so-called bench activities were. On or around September 29th, 2021, Plaintiff received an email from Defendant indicating this was the last time Defendant would follow up with Plaintiff about the reasonable accommodation request. Plaintiff responded on or around September 29th, 2021, asking for the second time if Plaintiff could bring medical documentation in person also noting that Plaintiff wasn't comfortable sharing more information until Plaintiff's complaints about hostility from management were addressed. Defendant responded to Plaintiff stating they'd be happy to resume the conversation at a later time, never acknowledging my complaints about management and never answering me about whether I could bring medical documentation in-person.

The next business day, October 1st, 2021, Plaintiff's compensation was reduced 32 hours for the pay period of 9/20/21.

This happened immediately after Plaintiff insisted that HR recognize Plaintiff's complaint about management, where Plaintiff had complained about being threatened and intimidated when HR and management were on the same email chain. Once Defendant finally answered Plaintiff about the bench activities. Plaintiff resumed immediately, that same day, so the punitive escalation of the pay reduction was out of congruency with what Plaintiff was told. Additionally, because of the way they had set up the bench activities, there was nothing that Plaintiff missed, Some weeks literally all of the activities were optional. Perhaps the worst though was that even after Plaintiff got connected to slack, some activities were posted on a different platform that plaintiff still didn't have access to. As soon as I got the work schedule from management, I reached out about the slack link, it was the management who didn't answer me, causing the delay."

**Defendant had notice of what the charge was about. The narrative's contents preserve the claims because it involves the same time frames, actors, and described conduct present in the narrative.**

> II.   <u>Portfolio Rejection as Retaliation or Interference after Reporting 'Abusive Behavior" to HR</u>

On Page 17 of 38 from the EEOC narrative, Plaintiff references her discussion with her manager, Antony, about the accommodation request and medical documentation, when Antony made derogatory comments, which occurred a week or so before the portfolio rejection

7

" I then got text messages from Antony asking about medical documentation and "how long you are gonna have this problem""

Also on page 17 of 38 from the EEOC narrative, Plaintiff discusses responding to HR's July 30 email:

"On July 30, I received an email from HR, saying there was a notification of a potential accommodation request with an optional form. I wrote back that same day with answers to the form."

On Page 18 of 38 from the EEOC narrative, Plaintiff **references "five emails Jalisa was copied on"** that went unanswered. These emails included the **message sent by Plaintiff to management about <u>abusive behavior from management regarding legal obligations</u>, literally hours before Plaintiff's portfolio was rejected.**

On Page 18 of 38 from the EEOC narrative, Plaintiff talks about this being a revocation and the given justification as not the real reason for the portfolio rejection.

…"August 10, Antony rejected my portfolio saying I needed to add a client name to the portfolio, even though it was already discussed the client name was confidential, and this was approved several weeks prior."

On Page 18 of 38 from the EEOC narrative, **days after the portfolio rejection, Plaintiff discusses feeling like she was being punished for complaining about what she believed to be unlawful discrimination:**

"…all the ignoring seemed like punishment for going to Respondent B with my concerns about unlawful discrimination"

On page 20 of 38 from the EEOC narrative, Plaintiff mentions being **"beyond distressed"** , **"humiliated"**, **feeling like she was terminated**, and "concerns about Antony" and being ignored:

"Beyond Distressed...On August 24, I wrote to Jalisa explaining I was humiliated and it seemed they were constructively discharging me...Also expressing concerns about Antony and ignoring from staff generally"

On page 21 of 38 from EEOC charge, **Plaintiff discusses another fact that supports the given justification was not the real reason for the portfolio rejection:** *she never received a portfolio approval even though she made the requested changes:*

"I never received an approval on the portfolio after this update"

Also On Page 21 of 38, Plaintiff talks about writing to HR with concerns that her portfolio remained unapproved, even though she made the requested changes but HR never responded to this email.

"September 3, 2021..I wrote back to Jalisa, also with hr department copied, explaining I updated the portfolio..Jalisa never responded to this email"

In Plaintiff's proposed amended Complaint Plaintiff explains this claim as the following:

"July 29, 2021, Plaintiff asked a manager if her disability was the reason her panel had not yet been scheduled. This manager refused to answer but did refer her to HR. July 30, Plaintiff communicated with HR about the reasonable accommodation request, explaining she could do all the essential functions of her job, gave examples of how this could be done, and explained her strengths. Plaintiff also on July 30th, specifically asked HR if her panel had not yet been scheduled because of the need for reasonable accommodation. Instead of engaging Plaintiff in any type of discussion, Defendant's HR provided no response for several weeks despite Plaintiff following up with HR multiple times during that time. On August 9th, when she stili hadn't heard anything back from anyone in HR about the reasonable accommodation request, or her manager about day-to-day responsibilities, despite reaching out multiple times to both parties, she received a 'panel invite' at 3:40pm that was open until 5:00pm, so zero notice and only open for the last hour of the day. On August 10th, Plaintiff wrote back, with management and HR copied, explaining that she needed HR to address concerns with some reasonable level of resolve and acknowledgement and she felt this was abusive. Further explaining, just as it would be unacceptable for me to disregard my ethical and legal obligations, it is similarly unacceptable for Revature staff to ignore legal and ethical obligations. A few hours later, that manager sent Plaintiff a message that her portfolio was rejected. According to Defendant's policies, the portfolio approval was necessary for client eligibility. So, it was critical for Plaintiff's job. It felt like the portfolio rejection was punishment for speaking out against management, especially because the purported reason for the rejection was something that had already been discussed. Even when

9

Plaintiff changed the portfolio again, this manager never issued the approval and the portfolio remained unapproved throughout the remainder of Plaintiffs employment. Because the portfolio approval was necessary for client eligibility, this really caused Plaintiff extreme distress. When Plaintiff continuously tried out to this manager, even inquiring that if email wasn't the best way to connect they could schedule a live session, the manager never answered, just like the manager never answered Plaintiff when she reached out about day to day responsibilities. What's even worse is that email was the official method of communication per Defendant's policies. Plaintiff ultimately reached out to HR about the portfolio rejection explaining she felt like her employment was threatened, that she felt like she was already fired because her manager wouldn't communicate with her, and that she was humiliated. This was August 24th, 2021 HR never acknowledged Plaintiff's complaints about this manager. This is the manager who told Plaintiff her difficulty with vocal speech was a problem, later forced her to complete multiple panels because he said her audio wasn't clear even though he knew Plaintiff was experiencing difficulty using vocal speech, and ignored her communications about day-to-day responsibilities."

**Defendant had notice of what the charge was about. The narrative's contents preserve the claims because it involves the same time frames, actors, and described conduct present in the narrative.**

> III.   Forced use of all accrued vacation time and abnormally excessive delay in acknowledging timesheet concerns as Interference with Right to request Reasonable Accommodation

On page 18 of 38, from the EEOC, **Plaintiff talks about Defendant tying acknowledgement of accommodation request to the fact that Plaintiff reported discrimination at the previous client:**

> On August 13, after not hearing anything back since July 30th, Jalisa wrote to me saying 'We know about the report you made to Respondent B's HR. Totally unrelated, but I provided an email to you with a form, did you get it'.

Page 19 of 38, from the EEOC narrative, Plaintiff discusses writing to HR with concerns about lost pay and actions not matching stated policy:

> "July 30 I also wrote to Jalisa about my concerns for: 1. Lost pay 2. Things being different than what stated policy was"

On Page 20 of 38, from the EEOC narrative, **Plaintiff discusses that HR did not respond to payroll concerns until nearly a month later, on August 23:**

> …"August 23 explaining that I've lost an entire month of pay at this point so I'm not sure I could be expected to continue on like this. I get a response the same day…"

Also on Page 20 of 38, from the EEOC narrative, **Plaintiff quotes HR saying there's no missing earnings, refusing to acknowledge her concerns**:

> "I've reviewed your payroll profile and I do not see any missed earnings"

Also on Page 20 of 38, from the EEOC charge, **Plaintiff talks about telling HR that she felt she was terminated and she felt humiliated**:

> "On August 24, I wrote to Jalisa explaining I was humiliated and it seemed they were constructively discharging me"

In Plaintiff's proposed amended Complaint Plaintiff explains this claim as the following:

> On July 30, 2021, Plaintiff wrote to Defendant's HR asking if she hadn't received a work schedule because of her disability. Plaintiff explicitly stated she was concerned because she understood the situation to be resulting in an entire week of lost pay as of that date. Despite several attempts on Plaintiff's part to follow up about this, the HR representative did not recognize Plaintiff's complaints about this until August 23, 2021. Usually Plaintiff would have been flooded with messages about requirements / meetings and time sheet submissions. All of this had stopped. Because Plaintiff's manager had also stopped responding to Plaintiff's direct communications after describing her disability as a problem. Plaintiff felt like she was already terminated. The fact that HR wouldn't even acknowledge her time sheets concerns made things worse. Although the hours between August 1 2021, and August 23, 2021 were eventually processed, it was only after HR confronted me about reporting discrimination at the previous client. So the Defendant directly tied any acknowledgement of my accommodation request and my pay concerns to the fact that I reported discrimination at the previous client. Plaintiff initially reached out to HR about the hours on July 30th and followed up multiple times with no response until August 23, 2021. Nearly a month having gone by, I was feeling like they'd already terminated my employment. Additionally, I was never reimbursed for the hours for the week of July 26,2021. HR never acknowledged my concerns that I lost an entire week of pay that week. Defendant forced to use all of my accrued time off because management

11

had stopped communicating with me, didn't answer when I asked about day-to-day expectations, and HR also never acknowledged the issue even though I brought it up several times.

**Defendant had notice of what the charge was about. The narrative's contents preserve the claims because it involves the same time frames, actors, and described conduct present in the narrative.**

IV.     The failure to respond to Plaintiff's repeated complaints about Plaintiff's supervisor Antony, as Interference by not enforcing company policies about discrimination.

On page 17 of 38 in the EEOC narrative, Plaintiff discusses her conversation with Antony where Antony asked "how long you are gonna have this problem".  On Page 19 of the EEOC narrative, Plaintiff notes sharing concerns with HR,  "I wrote to Jalia about my concerns…". Also on Page 17 of 38 in the EEOC narrative, Plaintiff discusses emails sent to HR between July 30. 2021 and August 11, 2021, **referencing the email describing "abusive behavior":**

> "...Jalisa as a recipient for all emails I sent to Respondent A's staff from July 30, 2021 -
> August 11, 2021 (total of five emails beyond the response for the accommodation form)."

Page 18 of 38 of the EEOC narrative  references when  HR representative wrote to Plaintiff, still ignoring her complaints about management:

> "On August 13, after not hearing anything back since July 30, Jalisa wrote to me saying
> 'we know about the report you made to Respondent B's HR. Totally unrelated, but i
> provided an  email to you with a form did you get it'? At this point, all the ignoring
> seemed like punishment for going to Respondent B with my concerns about unlawful
> discrimination."

On Page 20 of 38, **Plaintiff references concerns about Antony, and ignoring from staff generally in an email she wrote to HR on August 26, 2021:**

> "On August 26, I wrote….expressing concerns about Antony and ignoring from staff
> generally"

12

On Page 21 of 38, **Plaintiff talks about writing to HR with concerns that she still had no work schedule but HR never answered her.**

> "September 3, 2021..I wrote back to Jalisa, also with hr department copied, explaining I updated the portfolio..still no communications on the panel, and I wasn't sure what was meant by full participation in all bench activities. I explained what I was doing to meet and check for requirements also stated if there are expectations in terms of activities that i should be participating in that needs to be communicated to me. Jalisa never responded to this email"

On Page 22 of 38 from the EEOC narrative, **Plaintiff references her frustration with HR's continued refusal to recognize her complaints during the meeting with Sijuola, from HR, on the supposed to be interactive discussion from September 7, 2021:**

> "I have the text of what I shared during the meeting.... It was just 'ok, get us a doctor's note for the accommodation and we won't be addressing any of the concerns you've outlined for the time between July 26 - now"

On Page 28 of 38 from the EEOC narrative, Plaintiff discusses the last day she heard from HR, October 1, 2021, "...shared that I wasn't comfortable sharing more information unless my concerns about the hostility from management were addressed". This was the last day she heard from this employee.

In Plaintiff's proposed amended Complaint Plaintiff explains this claim as the following:

> On July 29, 2021, Antony described Plaintiff's disability as a problem and refused to answer her when she asked if that is why her panel had not been scheduled. On July 30, 2021 Plaintiff wrote to HR explaining she was concerned because she still hadn't received a work schedule. One week later, on August 6th, Plaintiff reached out to HR again explaining she still hadn't heard from her day-to-day manager, or the panel team. Still no response, on August 10th, Plaintiff wrote to HR about "abusive behavior", demanding acknowledgement and resolution. Finally on August 16th, the HR representative wrote to Plaintiff, except that it wasn't to discuss anything Plaintiff had written to her about, it was to inform Plaintiff that Defendant was aware she complained about discrimination at the initial client. At this point. Plaintiff insisted her concerns be addressed before addressing a third party. On August 23, 2021, Plaintiff explained to HR

that she hadn't been submitting hours because the staff never answered Plaintiff's communications. On August 26, 2021, Plaintiff reiterated to HR that she felt "constructively discharged" because the staff had stopped answering her even though she was consistently reaching out. September 3, 2021, Plaintiff again reached out to HR explaining that she still had no work schedule, her portfolio remained unapproved, and she hadn't heard from anyone about the interactive discussion. The HR representative never answered this email.September 3, 2021, Plaintiff again reached out to HR explaining that she still had no work schedule, her portfolio remained unapproved, and she hadn't heard from anyone about the interactive discussion. The HR representative never answered this email. Plaintiff's complaints continued and ultimately Plaintiff demanded that HR address hostility that Plaintiff was reporting. The last complaint that Plaintiff made to HR was on October 1st, when Plaintiff also again asked about bringing medical documentation in person, and Plaintiff never heard from that employee again.

**Defendant had notice of what the charge was about. The narrative's contents preserve the claims because it involves the same time frames, actors, and described conduct present in the narrative.**

## 2. Plaintiff pled facts sufficient to establish the existence of a disability

It's notable that Defendant's single case reference is *Rohan v. Networks Presentations LLC*, 375 F.3d 266 (2004), a decision issued before the ADAAA existed. In *Rohan*, the ADA analysis was reliant on legally abrogated cases. Given that *Rohan* was issued before the ADAA and that the analysis was focused on much of the subject matter addressed in the ADAAA, it is Plaintiff's opinion that *Rohan* is no longer good law.

The fact that Defendant's single case reference is *Rohan*- this highlights the main problem with Defendant's response: it ignores 20 years of case law and an amendment to the law itself.

In September 2008, Congress broadened the definition of "disability" by enacting the ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553 ("ADAAA" or "amended Act"). Further, Congress instructed that the term "substantially limits" be interpreted consistently with the liberalized purposes of the ADAAA. Id. § 12102(4)(B).29 CFR § 1630.2 is

14

instructive here, explaining that "(ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."

The fact that Plaintiff used 0% vocal speech, 100% written word to communicate for more than 8 months while at the job- this fact alone is sufficient to address both "Major life activity" and "substantially limits". Are most people in the general population using 100% written word and 0% vocal speech? The answer is no. Would most people in the general population find it substantially limiting (if not extremely limiting) to use 100% written word and 0% vocal speech? The answer is yes.

Very respectfully, a legitimate 'case law' analysis should begin with *Summers v. Altarum Institute, Corp.*, 740 F.3d 325 (2014), a case from the United States Court of Appeals, Fourth Circuit that is post ADAA, not the aborgated *Rohan*.

## A. <u>Actual</u>

In discussing the "actual" prong of the 'definitions analysis', the Summers Court explained "if Summers's impairment substantially limited his ability to walk, he suffered a "disability" for purposes of the ADA. Here, Plaintiff used 0% vocal speech, 100% written word to communicate for more than 8 months while at the job. Clearly, Plaintiff's impaired communication substantially limited her use of vocal speech. Thus, Plaintiff suffered a "disability" for purposes of the ADA. For definitions purposes, the analysis should be this simple.

## B. <u>Record of</u>

The facts about Plaintiff's use of written word to ask all questions, 100% of the time, during training was something Plaintiff received permission from Defendant for. Most people would not be writing out questions when asking questions at a new job, generally people would

find it a lot easier to have a free flow of vocal speech. Thus, Plaintiff's use of vocal speech was substantially limited and Plaintiff received a reasonable accommodation for the same.

There's also the facts about Plaintiff participating in activities with written words where other people were participating in vocal speech. For one example, there were the meetings during staging where Plaintiff received permission to communicate work updates in writing where most people (if not all people) communicated their work updates with vocal speech. Thus, Plaintiff's use of vocal speech was substantially limited and Plaintiff received a reasonable accommodation for the same.

There's also the facts about more than 8 months of 0% percent vocal speech, 100% written word. Thus, Plaintiff's speech was substantially limited and received reasonable accommodation for the same. There is also the fact that Defendant noticed Plaintiff's impaired speech during training.

There is also the fact that Plaintiff was trying to get an in-person meeting to discuss the accommodation and deliver medical documentation as part of the accommodation process. There is also the fact that Defendant never responded to Plaintiff's request for an in-person meeting even though Plaintiff asked multiple times. There is the fact that Plaintiff has received medical treatment for a disability that restricts her ability to communicate and specifically impairs her use of vocal speech.

All of this taken together is more than enough. Plaintiff's impairments are a source of enormous pain and isolation for Plaintiff. Why don't you try not using vocal speech for a majority of the time even for a week, you probably wouldn't be able to live like that.

### C. Regarded As

There is the fact that Plaintiff used 0% vocal speech for more than 8 months. There is the fact that Defendant's employee suggested that it would not be possible for Plaintiff to even

complete a technical interview with a client using all text on July 26, 2021. There is the fact that Plaintiff's manager described Plaintiff's communication impairment as a problem, asking "how long are you going to have this problem". **There is the most significant fact that this same manager stopped answering her communications immediately after this, ignoring questions of day-to-day expectations, questions about the need for an accommodation to complete the panel, and even refused to meet with her to discuss concerns.**

**It was nearly two months later when Plaintiff first received a response from management about day-to-day expectations. Let me repeat that again, nearly two months later when Plaintiff first received a response about day-to-day expectations despite Plaintiff's communications to staff and despite Plaintiff's Complaints to HR.**

**There is also the fact about how long it took Defendant to provide Plaintiff with complete forms for medical certification, a month and a half. This fact is also significant because Plaintiff's manager wouldn't communicate with her throughout this entire time about day-to-day expectations.  There is the fact that previously, at all other times in Plaintiff's employment, whether she was in training, staging, or with the client, Plaintiff received communications from Defendant multiple times per day.** At the very least, Plaintiff had at least daily communications from someone at all other times.

**The cessation of daily communications was quite dramatic, especially because Plaintiff kept reaching out. These facts support that Defendant deemed Plaintiff substantially limited in her ability to perform her specific job at that time, or even to work generally.**

17

## CONCLUSION

The proposed amended complaint is not futile with respect to the administrative exhaustion requirement and is similarly not futile with respect to pleading she was a qualified person with a disability.

With respect to the administrative exhaustion, Plaintiff added important factual context about her interaction with the EEOC. What is more, Plaintiff revised her interference and retaliation claims. Since Defendant only raised the issue of administrative exhaustion, any assessment of Plaintiff's interference and retaliation claims should be beyond the administrative exhaustion issue should be withheld until Defendant raises such specific objections. **The narrative's contents preserve the claims because it involves the same time frames, actors, and described conduct present in the narrative.**

With respect to sufficiently pleading she was a qualified person with a disability, Plaintiff's proposed amended complaint adds critical facts about the employment history between Plaintiff and Defendant. Plaintiff's proposed amended complaint also adds facts about Plaintiff's qualifications.

Plaintiff very respectfully requests the Court to GRANT THE MOTION TO AMEND, allowing all claims to proceed, demanding we move to the next stage of the litigation process. Alternatively, if there is something that is unclear, ambiguous, or something that needs to be briefed, Plaintiff very respectfully requests this court to WITHHOLD an order and instruct Plaintiff and Defendant to address the same.

## CERTIFICATES

### A. Truthfulness

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and Plaintiff served Defendant with a copy of this document on the same day.

### B. Ghost Writing

I certify under penalty of perjury under the laws of the United States of America, pursuant to Local Rule 83.1(M), no attorney has prepared, or assisted me in the preparation of this document.

Dated: **November 20, 2023**

Very Respectfully,

Danielle Taylor