**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **DANIELLE TAYLOR** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:22-cv-1153-RDA-WBP** |
| | ) | |
| **REVATURE LLC** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS FOURTH AMENDED COMPLAINT**

Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com

*Counsel for Defendant Revature LLC*

## <u>TABLE OF CONTENTS</u>

BACKGROUND ............................................................................................................ 1

FACTUAL ALLEGATIONS ........................................................................................ 2

PROCEDURAL HISTORY............................................................................................ 5

ARGUMENT ................................................................................................................ 7


A.   Plaintiff Has Failed to Plead a Discriminatory Discharge Claim Under the ADA. ............... 7

  1.   Plaintiff has not adequately pled a disability. ................................................................. 7

  2.   Plaintiff has not adequately pled she is a "qualified individual." .................................. 9

  3.   Plaintiff has not adequately pled she was meeting her employer's expectations. ........ 10

  4.   Plaintiff has not pled facts that would suggest her discharge occurred under
       circumstances giving rise to an inference of discrimination......................................... 11

B.   Plaintiff Cannot State a Claim for Failure to Accommodate. ................................................. 12

  1.   Plaintiff has not alleged she was a qualified individual with a disability. .................... 12

  2.   Plaintiff has not alleged that Revature had "notice" of her alleged disability. ............. 12

C.   Plaintiff Has Failed to State a Claim for Retaliation for an Alleged Pay Reduction. ........... 13

  1.   Plaintiff's retaliation claim must be dismissed for failure to exhaust administrative
       remedies. ....................................................................................................................... 13

  2.   Plaintiff fails to state a plausible retaliation claim in her Third Count. ....................... 14

D.   Plaintiff Has Failed to State a Claim for Hostile Environment. ............................................. 17

  1.   Plaintiff has not alleged she was a qualified individual with a disability. .................... 17

  2.   Plaintiff has not alleged severe or pervasive conduct. ................................................. 17

E.   Plaintiff Has Failed to State Claims for Retaliation or Interference Related to the
     Rejection of her Portfolio. ...................................................................................................... 18

  1.   Plaintiff's claim must be dismissed for failure to exhaust administrative remedies..... 19

2.    Plaintiff cannot state a retaliation claim based on rejection of her portfolio. ............... 19

3.    Plaintiff cannot state an interference claim based on rejection of her portfolio. .......... 19

F.    Plaintiff Has Failed to State a Claim for Interference with Her Request for
      Accommodation. ....................................................................................................... 22

1.    Plaintiff's claim must be dismissed for failure to exhaust administrative remedies. ..... 22

2.    Plaintiff cannot state a claim for interference. ............................................................ 22

G.    Plaintiff Has Failed to State a Claim for Interference Based on Revature's Enforcement
      of its Policies. .......................................................................................................... 24

1.    Plaintiff's claim must be dismissed for failure to exhaust administrative remedies. ..... 24

2.    Plaintiff cannot state a claim for interference. ............................................................ 24

H.    The Fourth Amended Complaint Should be Dismissed with Prejudice. .............................. 25

      CONCLUSION .......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

*Akbar-Hussain v. ACCA, Inc.*,
2017 WL 176596 (E.D. Va. 2017)............................................................................. 9, 12

*Britt v. DeJoy*,
2022 WL 4280495 (4th Cir. 2022) ....................................................................... 18

*Brown v. City of Tucson*,
336 F.3d 1181 (9th Cir. 2003) ............................................................................. 20

*Byers v. HSBC Fin. Corp.*,
416 F. Supp. 2d 424 (E.D. Va. 2006) ................................................................... 23

*Caldwell v. United Parcel Serv., Inc.*,
2016 WL 1736388 (W.D. Va. 2016) ..................................................................... 9

*Chisholm v. Mountaire Farms of North Carolina Corp.*,
629 F. Supp. 3d 368 (M.D.N.C. 2022) ................................................................. 9

*Coleman v. Kettler Mgmt.*,
2022 WL 17585780 (E.D. Va. 2022)..................................................................... 17

*Craft v. Fairfax County Government*,
2016 WL 1643433 (E.D. Va. 2016)....................................................................... 7

*Dungey v. Culmen Int'l LLC*,
2022 WL 4357443 (E.D. Va. 2022)....................................................................... 12

*Field v GMAC LLC*,
660 F. Supp. 2d 679 (E.D. Va. 2008) ................................................................... 25

*Fox v. Gen. Motors Corp.*,
247 F.3d 169 (4th Cir. 2001) ............................................................................... 17

*Frakes v. Peoria Sch. Dist. No. 150*,
872 F.3d 545 (7th Cir. 2017) ............................................................................... 20

*Freilich v. Upper Chesapeake Health, Inc.*,
313 F.3d 205 (4th Cir. 2002) ............................................................................... 15

*Gentry v. E. W. Partners Club Mgmt. Co. Inc.*,
816 F.3d 228 (4th Cir. 2016) ............................................................................... 19

*Hamilton v. Newby*,
2020 WL 972752 (E.D. Va. 2020)......................................................................... 25

*High v. Wells Fargo Bank,*
    2023 WL 2505540 (E.D. Va. 2023)...................................................................... 18

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.,*
    432 F. Supp. 2d 571 (E.D.Va.2006) ................................................................... 25

*Jeffries v. Gaylord Entm't,*
    2013 WL 1316382 (D. Md.) ....................................................................... 12, 13

*Jones v. HCA,*
    16 F. Supp. 3d 622 (E.D. Va. 2014) ............................................................. 14, 19

*Kelly v. Town of Abingdon, Virginia,*
    90 F.4th 158 (4th Cir. 2024) ...................................................................... 20, 21

*Miles v. Dell, Inc.,*
    429 F.3d 480 (4th Cir. 2005) ........................................................................... 14

*Perkins v. Int'l Paper Co.,*
    936 F.3d 196 (4th Cir. 2019) ........................................................................... 18

*Potter v. SunTrust Bank,*
    2014 WL 5410634 (E.D. Va. 2014)................................................................... 14

*Roberts v. Glenn Indus. Grp., Inc.,*
    998 F.3d 111 (4th Cir. 2021) ........................................................................... 19

*Smith v. Virginia Dep't of Agric. & Consumer Servs.,*
    2012 WL 2401749 (E.D. Va. 2012).................................................................. 9, 12

*Steffes v. Stepan Co.,*
    144 F.3d 1070 (7th Cir.1998) .......................................................................... 13

*Stewart v. Weast,*
    228 F. Supp. 2d 660 (D. Md. 2002) .................................................................. 13

*Thompson v. City of Charlotte,*
    827 F. App'x 277 (4th Cir. 2020)...................................................................... 15

*Travelers Cas. & Sur. Co. v. Danai,*
    2005 WL 2045398 (E.D. Va. 2005)................................................................... 25

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.,*
    42 F.4th 185 (4th Cir. 2022) ........................................................................... 25

*Wilson v. Dollar Gen. Corp.,*
    717 F.3d 337 (4th Cir. 2013) ........................................................................... 12

Defendant Revature LLC ("Revature") hereby submits this memorandum in support of its Motion to Dismiss Plaintiff's claims pursuant to Rule 12(b)(6).  In her fifth iteration of her Complaint (Dkt. 55-1, 55-2, and 55-3) ("Fourth Amended Complaint"), Plaintiff Danielle Taylor, proceeding *pro se*, continues to allege numerous claims arising under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") against Revature.  For the reasons set forth below, Plaintiff still fails to state a claim upon which relief can be granted and her claims should be dismissed with prejudice.

## BACKGROUND[1]

Revature is an Information Technology (IT) provider that staffs the IT needs of its corporate clients with qualified software programmers.  To ensure an adequate supply of qualified labor, Revature offers a unique 10-12 week paid training program (the "Training Program") that teaches entry level software developers through intensive and customized training focused on simulated real-world issues.  After an employee completes the Training Program, Revature seeks to place the employee with one of its corporate clients.

When a client assignment is completed or the client determines that it no longer has a need for the Revature employee, Revature seeks to deploy the worker with another corporate client.  If there is no assignment readily available, the employee is placed in Revature's nonbillable status, referred to as the "Bench."  During the period the employee is on the Bench, Revature typically maintains the employee in pay status (although at a lower rate since they are not in a billable role during that time).  Revature utilizes that time to provide the employee with ongoing skills training

---

[1] Plaintiff's *pro se* Complaint fails to provide any background or context to her claims.  In order to provide some of that context, Revature has included facts in this section that are beyond the strict allegations in the Complaint.  For the purposes of its legal argument, however, Revature relies entirely on Plaintiff's allegations in accordance with Rule 12(b)(6).

in order to maintain and enhance the employee's software development skills.  This includes working on certain projects that increase their skills, participating in internal "panel" interviews to ascertain the employee's knowledge level and need for additional training, and interviewing with corporate clients of Revature.

Plaintiff began work with Revature on July 6, 2020.  Following the completion of the Training Program, Plaintiff was placed at one of Revature's customers on November 9, 2020. Effective July 23, 2021, Plaintiff was removed from that assignment at the client's request, and she was placed on the Bench while Revature sought other opportunities for her.

Plaintiff remained on the Bench for over three months before Revature separated her employment.  During her time on the Bench, Plaintiff failed to complete numerous assigned tasks, failed to secure any of the opportunities presented to her to work with Revature's customers, and declined even to interview for the one opportunity that Revature presented her.  Given this track record, on November 3, 2021, Revature terminated Plaintiff's employment.

## **FACTUAL ALLEGATIONS**

The following factual allegations are derived from Plaintiff's Fourth Amended Complaint.

1. Plaintiff was placed on the Bench in July 2021.  (Dkt. 55-3 at 8 of 31.)

2. While on the Bench, Plaintiff was given the opportunity to interview for positions with other corporate clients.  (*Id.* at 9 of 31.)

3. While on the Bench, Plaintiff was given the opportunity to participate in multiple internal panel interviews.  (*Id.* at 9-11 of 31.)

4. While on the Bench, Revature continued to pay Plaintiff a minimum wage.  (*Id.* at 25 of 31 ("While not with the client, I was paid minimum wage.").)

5. Shortly *after* being placed on the Bench, on July 30, 2021, Plaintiff sent an email to the Revature's human resources department stating that she was "experiencing difficulty using

vocal speech" and requested "text to talk instead of vocal speech."  (*Id.* at 13 of 31.)  Plaintiff did not specify to Revature the precise nature of her disability at that time (or at any other time).

6.      Revature repeatedly asked Plaintiff to obtain and produce a doctor's certification of her medical impairments in order to provide Revature with further information regarding her claimed disability and need for accommodation.  (*See, e.g., id.* at 13 of 31 ("On August 25, Jalisa wrote to me, basically saying let's skip the interactive discussion, here's some forms for a medical provider…").)

7.      On or about September 7, 2021, Plaintiff had a conversation with Sijuola, a Human Resources representative of Revature, in which she was once again directed to obtain and produce a doctor's note for any accommodations that she was seeking.  (*Id.* at 15 of 31.)

8.      The following day, on or about September 8, 2021, Sijuola, the HR representative, followed up with an email once again providing Plaintiff with the medical certification form that she needed to have completed by a doctor in order for the company to review and assess any accommodation requests.  (*Id.* at 15-16 of 31.)

9.      Two weeks later, on or about September 22, 2021, Sijuola followed up with an email asking Plaintiff about the status of the ADA medical form.  (*Id*. at 17 of 31.)

10.      One week later, on or about September 29, 2021, HR representative Sijuola sent Plaintiff an email with the subject of "RE Interactive Discussion – 2nd/Final Follow Up."  (*Id.* at 20 of 31.)

11.      Although Plaintiff suggested she might be able to return the forms in person (*id*. at 21 of 31), she never confirmed that she had obtained the required ADA certification form from a medical professional.

12.     On or about October 1, 2021, Revature informed Plaintiff that it could not engage in any further discussion of potential accommodations unless, and until, the ADA certification forms were returned.  (*Id.* ("October 1, Sijuola writes back, saying 'the conversation is over now but I'll be more than happy to resume when you are ready to share the forms'").)

13.     Because Plaintiff never provided the requested forms, Revature considered the request for an accommodation to be withdrawn.  (*See id.*)

14.     In addition to her failure to provide the ADA certification forms that Revature needed to understand and assess any accommodation requests, Plaintiff also failed to actively participate in required Bench activities.  (*Id.* at 14 of 31.)

15.     On or about August 31, 2021, Plaintiff received a communication from Revature human resources in which she was instructed that she "must begin full participation in all Bench activities." (*Id.*)

16.     On or about September 8, 2021, Plaintiff received another email from Revature instructing her to "please resume with participation in Bench activities."  (*Id.* at 16 of 31.)

17.     On or about September 17, 2021, Plaintiff received another email from Revature with the subject line: "Bench guidelines" and reiterating the company's expectation that Plaintiff would participate in all required Bench activities, including following a schedule updated in Slack (an internal messaging app).  (*Id.* at 16-17 of 31.)

18.     On or about September 23, 2021, Plaintiff received another email from Revature which stated:

> Good afternoon, Danielle.  After your discussion with HR on 9/7/21, you were instructed to resume Bench activities in full.  After over a week of continued nonparticipation, on 9/17/21 you were notified again by Antony of the expectations regarding Bench participation.  At this time you still not have not participated in any of the required activities for your time on the Bench.

4

> This is formal notice that you are to begin Bench activities participation
> in full no later than tomorrow or escalation will be initiated.

(*Id.* at 17-18 of 31.)

19.     On or about November 1, 2021, Revature informed Plaintiff that it had a potential

placement opportunity for her in Florida.  However, Plaintiff declined to participate in an interview

for the opportunity on the grounds that the opportunity was being placed through a temp agency

and was of indefinite length.  (*Id.* at 25-26 of 31.)

20.     After Plaintiff declined to interview for the Florida opportunity, Revature informed

Plaintiff that it was moving ahead with ending the employment relationship and presenting

Plaintiff with a Mutual Release document.  (*Id.* at 26 of 31.)

## PROCEDURAL HISTORY

1.     Plaintiff filed her Charge with the EEOC on January 18, 2022. (Dkt. 55-3 at 6

of 31.)

2.     Plaintiff filed her initial Complaint on October 13, 2022 asserting four claims under

the ADA: (1) discriminatory discharge; (2) failure to accommodate; (3) retaliation; and (4) unequal

terms and conditions.  (Dkt. 1.)

3.     On January 27, 2023, Revature moved to dismiss each of those claims.  (Dkt. 8.)

4.     On February 21, 2023, Plaintiff amended her Complaint under Rule 15(a)(1)(B) to

add a Fifth Claim to the Complaint for a cause of action for "confidentiality" under 42 U.S.C.

§ 12112(d)(4)(c).  (Dkt. 16.)  Revature addressed the Fifth Claim as part of its initial Motion to

Dismiss.  (Dkt. 18.)

5.     With the initial Motion to Dismiss still pending, Plaintiff requested and was given

permission by the Court to add a Sixth Count alleging interference under the ADA.  (Dkt. 20, 24.)

6.     On April 5, 2023, Revature moved to dismiss the additional Sixth Count.  (Dkt. 27.)

7.      On April 18, 2023, Plaintiff, without leave of the Court, filed an "amendment" purporting to add a Seventh Count alleging an alternative Interference claim under the ADA as a "matter of course."  (*See* Dkt. 30.)

8.      Revature moved to strike the latter amendment because Plaintiff did not have consent of Revature or leave from the Court.  (Dkt. 34.)

9.      On September 28, 2023, the Court granted all three of Revature's pending motions, dismissed each of Plaintiff's claims, and provided Plaintiff 30 days to seek leave to amend again. (Dkt. 38 (the "Dismissal Order").)

10.     On October 27, 2023, Plaintiff filed a Motion to Amend (Dkt. 39) and attached the Fourth Amended Complaint as her proposed pleading.

11.     On May 15, 2024, the Court granted Plaintiff's Motion to Amend and directed her "to file her Amended Complaint (ECF No. 39-1) with the Clerk's office as a new docket entry." (Dkt. 44 ("Order Permitting Amendment").)

12.     Plaintiff did not initially comply with that Order Permitting Amendment and has not filed the Fourth Amended Complaint in this action.  Instead, Plaintiff filed the Fourth Amended Complaint as a new lawsuit.  (*See Taylor v. Revature LLC*, 1:24-cv-880-PTG-LRV ("*Taylor II*"), Dkt. 1.)

13.     On June 21, 2024, Plaintiff formally served a summons for *Taylor II* along with a copy of the Fourth Amended Complaint on Revature.  (*See Taylor II*, Dkt. 3.)

14.     On July 12, 2024, Revature filed a Motion to Dismiss the *Taylor II* claims on procedural grounds.  (*See id.*, Dkt. 5, 6.)  That Motion remains pending, with a hearing currently set before the Hon. Patricia T. Giles for August 15, 2024.

15.     Following the filing of its Motion to Dismiss in *Taylor II*, Plaintiff finally filed her Fourth Amended Complaint (which are the same claims filed in *Taylor II*).  (*See* Dkt. 55.)

16.     For the reasons explained below, each of the claims asserted by Plaintiff in her Fourth Amended Complaint should be dismissed with prejudice.

## ARGUMENT

A.     **Plaintiff Has Failed to Plead a Discriminatory Discharge Claim Under the ADA.**

As previously noted by the Court in its Dismissal Order, in order to state any non-retaliation (or interference) claim, Plaintiff must first plead allegations that are sufficient to demonstrate she is a "qualified individual with a disability." (Dkt. 38 at 10).  To the extent she is able to meet that pleading requirement, Plaintiff must further demonstrate that: (1) she is "disabled" under the statute; (2) she was discharged; (3) at the time of discharge, she was performing the job at a level that met her employer's legitimate expectations; and (4) the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.  *See, e.g., Craft v. Fairfax County Government*, 2016 WL 1643433, at *5 (E.D. Va. 2016).  Although Plaintiff has alleged she was discharged, she has not met any of the other pleading requirements.  Consequently, this claim should be dismissed with prejudice.

1.     Plaintiff has not adequately pled a disability.

In its Dismissal Order, the Court found that Plaintiff had not adequately pled that she had an actual disability, had a record of disability, or had been regarded as disabled.  (Dkt. 38 at 10-14.)  In rejecting Plaintiff's argument that she had pled an actual disability, the Court stated:

> When analyzing whether a plaintiff has pleaded a disability, courts routinely analyze whether a plaintiff has alleged a physical or mental impairment and whether that impairment limits one or more major life activities.  Plaintiff alleges in her Complaint that her disability is "communication," which does refer to a major life activity, but that does not adequately describe or specify any physical or mental impairment. Dkt. 1 at 4. Further, in Plaintiff's EEOC

> Charge that was attached to her Complaint, Plaintiff stated that she had a "need to use written word for learning and communication purposes," Dkt. 1-1 at 8, but Plaintiff does not allege any medical condition that limits her ability to communicate. In fact, her Complaint is devoid of any reference to a particular disability or disabilities. Thus, Plaintiff has failed to allege sufficient facts to establish that any issues she has with "communication" qualify as a disability under the ADA, which is grounds for dismissal.

(Dkt. 38 at 11 (emphasis added and case citations omitted).)  As best as can be discerned, Plaintiff's only attempt to address actual disability in the Fourth Amended Complaint, is an oft repeated allegation that:

> Plaintiff has received medical treatment for a disability that restricts her ability to communicate and specifically impairs her use of vocal speech.

(Dkt. 55-1 at 1 of 8; 55-2 at 1 and 4 of 13.)

This clearly does not remediate the issue identified by the Court.  Despite the Court's Order, Plaintiff still does not allege that she has any specific medical condition that limits her ability to communicate.  She has simply, in a conclusory fashion, stated that she has a disability that affects her speech.  This is not sufficient.

Additionally, Plaintiff does not allege any specific facts that would establish her unidentified condition _substantially_ limits her vocal speech.  Quite simply, the Fourth Amended Complaint still does not adequately allege an actual disability.

Nor does the Fourth Amended Complaint establish a "record of disability."  Previously, the Court rejected such a claim because "Plaintiff has failed to allege any facts identifying a physical or mental impairment in her Complaint or provide any medical documentation of a physical or mental impairment."  (Dkt. 38 at 13.)  Plaintiff's Fourth Amended Complaint still does not identify any physical or mental impairment for which she previously has received treatment or attach any medical documentation to support a claim that she previously was treated for disability.

Lastly, the Court previously rejected a "regarded as" disability claim because Plaintiff failed to adequately allege that Revature viewed her as unable to work in the industry generally or viewed her as substantially limited in her ability to do her job as a result of any medical impairment. (*Id*.) As best as can be discerned, Plaintiff has not added any allegations in the Fourth Amended Complaint that would affect the Court's analysis on a regarded as claim.

Given that she has not adequately pled that the existence of a disability, Plaintiff's ADA termination claim must be dismissed on this basis alone. *See, e.g., Caldwell v. United Parcel Serv., Inc.*, 2016 WL 1736388, at *5 (W.D. Va. 2016); *Akbar-Hussain v. ACCA, Inc.*, 2017 WL 176596, at *4 (E.D. Va. 2017); *Smith v. Virginia Dep't of Agric. & Consumer Servs.*, 2012 WL 2401749, at *9 (E.D. Va. 2012).

### 2.    Plaintiff has not adequately pled she is a "qualified individual."

To establish any non-retaliation claim under the ADA, in addition to demonstrating she was disabled, Plaintiff was also required to show she was a "qualified individual" by articulating the essential functions of her position and alleging facts sufficient to demonstrate she could perform those essential functions with or without a reasonable accommodation. (Dkt. 38 at 10, FN 7 (citing *Chisholm v. Mountaire Farms of North Carolina Corp.*, 629 F. Supp. 3d 368, 375 (M.D.N.C. 2022).)

In the Fourth Amended Complaint, Plaintiff describes the essential functions of her position as follows:

> Plaintiff was employed by the defendant from July 2020 until November 2021. Plaintiff's essential work duties were: operation of computers, operation of computer applications, long periods of sitting or standing in the same place, documenting software use cases with written communication based on verbal or written inquiries, writing code to supplement existing software applications, writing tests for the software applications, creating visuals explaining software applications, communicating about Plaintiff's work, collaborating with others, willingness to learn new programing

languages and accept tasks about it, and a willingness to relocate anywhere in the contiguous US for a permanent employment opportunity.

(Dkt. 55-1 at 1 of 8.)

However, despite listing 10 separate essential functions, Plaintiff's Fourth Amended Complaint fails to plausibly allege that she could *perform* any or all of those functions with or without an accommodation. Consequently, she has not alleged that she was a qualified individual subject to protection under the statute.

3. <u>Plaintiff has not adequately pled she was meeting her employer's expectations.</u>

Even if Plaintiff had adequately pled she was a qualified individual with a disability, her claim would still fail because the facts do not adequately allege that Plaintiff was meeting Revature's legitimate expectations.

Plaintiff's own allegations acknowledge that she was not meeting expectations in the final three months of her employment. To begin with, throughout the relevant time period, and before she even notified Revature of any potential need for accommodation, Plaintiff was on Revature's "Bench" and, therefore, not generating revenue for the company. (*See* Dkt. 55-3 at 9 of 31.) More critically, during this time she was being paid to sit on the Bench, Plaintiff received a number of directives and warnings from Revature that she needed to actively participate in the Bench activities that had been planned for her, and that she was failing to do so. (*See* Factual Allegations, *supra*, ¶¶ 14-17.)

Finally, on November 1, 2021, Revature identified a potential placement opportunity for Plaintiff, but she refused to interview for the job because the position was with a "temp agency with no determined contract length." (Dkt. 55-3 at 25-26 of 31.) Shortly after this refusal, Plaintiff's employment with Revature was terminated. (*See id.*)

Plaintiff has not, and cannot, plausibly allege that she was meeting Revature's expectations while she sat on the Bench for three months, failed to perform the Bench activities that were designed to keep her skills intact, and declined to interview with a potential placement opportunity that would have allowed her to return to a billable status.

4.    <u>Plaintiff has not pled facts that would suggest her discharge occurred under circumstances giving rise to an inference of discrimination.</u>

In the Fourth Amended Complaint, Plaintiff's own allegations establish that when she raised the need for a potential accommodation, Revature responded by: (i) providing her with ADA medical certification forms so it could assess the limitations imposed by her alleged disability and any accommodations proposed by the medical provider that would allow her to perform the essential functions of her position; (ii) reminding her on several occasions of the need to provide such ADA forms; (iii) engaging with her on several occasions in the interactive process; and (iv) ultimately concluding that the company could not move forward with her accommodation request in light of her failure to provide the requested information. (*See* Factual Allegations, *supra*, ¶¶ 6-13.)

The lack of any inference of discrimination is further supported by Plaintiff's own allegations that she was in a nonbillable role on the Bench for more than three months during which time she failed to participate in required Bench activities and declined to interview for a potential placement opportunity.  There is just nothing in the Fourth Amended Complaint that would even suggest the presence of an inference of discrimination.

In addition, the fact that she purportedly alleged the presence of a disability in July 2021 and was not discharged until November 2021 further undermines any finding of an inference of disability discrimination.  As this court recently held, an inference of discrimination is especially

lacking when, as here, "[o]ver three months elapsed between Plaintiff's disability disclosure and [her] termination." *Dungey v. Culmen Int'l LLC*, 2022 WL 4357443, at *6 (E.D. Va. 2022).

Given each of the deficiencies outlined above, that disability discrimination claim should be dismissed with prejudice.

**B.     <u>Plaintiff Cannot State a Claim for Failure to Accommodate.</u>**

Plaintiff's second claim that Revature failed to accommodate is likewise deficient.    In order to state a failure to accommodate claim, a "plaintiff must show: (1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).  Here, Plaintiff has failed to adequately plead facts sufficient to state this claim.

1.     <u>Plaintiff has not alleged she was a qualified individual with a disability.</u>

As noted in Section A.1-2 of this Memorandum, Plaintiff has not adequately alleged she was qualified individual with a disability under the ADA.   Therefore, her alleged failure to accommodate claim must be dismissed on this ground alone. *See, e.g., Akbar-Hussain*, 2017 WL 176596 at *4; *Smith*, 2012 WL 2401749 at *9.

2.     <u>Plaintiff has not alleged that Revature had "notice" of her alleged disability.</u>

Her accommodation claim also fails because Plaintiff has not, and cannot, allege that she adequately put Revature on notice of her disability.  In order to put an employer on notice, an employee must: (i) identify her alleged impairment and (ii) respond to an employer's reasonable requests for information. *See, e.g., Jeffries v. Gaylord Entm't*, 2013 WL 1316382, at *4 (D. Md.), *aff'd*, 538 F. App'x 313 (4th Cir. 2013).  As the court noted in *Jeffries*:

> It is undisputed that Jeffries refused to provide documentation about her disability in connection with her requests for the parking space. She refused to identify either the nature or extent of her disability to her supervisor, explaining "I don't have to disclose that." The burden, however, was on Jeffries to provide Gaylord with information about her specific disability so that it could, in turn, make a decision about whether providing the handicap-accessible parking space was a reasonable accommodation. For so long as Jeffries refused to explain her reasons, she failed to meet her burden as to notice and impermissibly obstructed Gaylord's ability to assess whether a parking pass was warranted or whether an alternative accommodation was appropriate.

*Id.* at *4 (citing *Stewart v. Weast,* 228 F. Supp. 2d 660, 663 (D. Md. 2002) and *Steffes v. Stepan Co.,* 144 F.3d 1070, 1072 (7th Cir.1998)).

Nowhere in her Fourth Amended Complaint does Plaintiff allege that she disclosed to Revature any alleged physical or mental impairment from which she purportedly suffered. Moreover, as the Fourth Amended Complaint establishes, despite numerous efforts on the part of Revature, Plaintiff never provided the requested ADA certification paperwork.  (*See* Factual Allegations, *supra*, ¶¶ 6-13.)

Plaintiff's failure to allege she was a qualified individual with a disability and her failure to put Revature on notice of any alleged disability during her employment are both fatal to her accommodation claim.  Therefore, that claim should be dismissed with prejudice.

**C.**   **Plaintiff Has Failed to State a Claim for Retaliation for an Alleged Pay Reduction.**

In her third count, Plaintiff asserts a claim for "[r]etaliation for complaining about discrimination resulting in deduction of compensation October 1, 2021."  (Dkt. 55-2 at 3 of 13.) This claim must be dismissed both for failure to exhaust administrative remedies and because Plaintiff has failed to state a claim.

     1.   Plaintiff's retaliation claim must be dismissed for failure to exhaust administrative remedies.

As noted by the Court in its Dismissal Order, "[a] plaintiff is barred from bringing a claim

13

for retaliation in court when her charge alleges discrimination but fails to check the box or raise a claim for retaliation in the narrative."  (Dkt. 38 at 13 (citing *Potter v. SunTrust Bank*, 2014 WL 5410634, at *6 (E.D. Va. 2014)).)  The Court then analyzed Plaintiff's EEOC Charge and found that it failed to preserve a claim for retaliation, stating:

> Here, Plaintiff failed to exhaust her retaliation claim. In her EEOC Charge, Plaintiff failed to select the box for retaliation. Additionally, in the narrative section of Plaintiff's EEOC charge, she described her claims specifically as "hostile environment and failure to provide a reasonable accommodation," but did not mention retaliation. Dkt. 1-1 at 7. Thus, the Court finds Plaintiff's EEOC Charge did not put Defendant "on notice of" Plaintiff's ADA retaliation claim as it did not contain allegations describing retaliation. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).  Thus, Plaintiff failed to exhaust her administrative remedies as to her ADA retaliation claim and lacks standing to bring a retaliation claim under the ADA.

*Id.* (citing *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)).

Plaintiff's Fourth Amended Complaint attaches the same EEOC Charge that the Court analyzed in its prior order.  (*Compare* Dkt. 1-1 at 6 of 31 *with* Dkt. 55-3 at 6 of 31.)  Thus, the Court's prior ruling is still applicable.  Plaintiff did not exhaust her administrative remedies with regard to any retaliation claims and, therefore, her retaliation claim in Count Three must be dismissed with prejudice.

2.   <u>Plaintiff has not adequately pled a plausible retaliation claim.</u>

Moreover, even if Plaintiff had preserved the retaliation claim in her Charge, this claim would still be subject to dismissal for failure to state a claim.  In order to state a claim for retaliation under the ADA, a plaintiff must plead sufficient facts to plausibly show, "(1) that they engaged in protected conduct; (2) suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action." *Jones v. HCA*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014). To meet the first element, a plaintiff must allege sufficient facts to plausibly demonstrate "the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA."

14

*Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002); *see also Thompson v. City of Charlotte*, 827 F. App'x 277, 279 (4th Cir. 2020).

As best as can be discerned, the protected activity claimed by Plaintiff for the Third Count is an email she supposedly sent on September 23, 2021. For the reasons described below, Plaintiff has not sufficiently pled a protected activity.

On August 31, 2021, Plaintiff was instructed that she "must begin full participation in all bench activities." (Dkt. 55-3 at 14 of 31.) On September 8, 2021, Plaintiff received another email from Revature instructing her to "please resume with participation in bench activities." (*Id.* at 16 of 31.) On September 17, 2021, Plaintiff received another email from Revature with the subject line: "bench guidelines" and reiterating the company's expectation that Plaintiff would participate in all required bench activities. (*Id.* at 16-17 of 31.) On September 23, 2021, Plaintiff received a Performance Deficiency Notice from Revature which stated:

> Good afternoon, Danielle. After your discussion with HR on 9/7/21, you were instructed to resume Bench activities in full. After over a week of continued nonparticipation, on 9/17/21 you were notified again by Antony of the expectations regarding Bench participation. At this time you still not have not participated in any of the required activities for your time on the Bench.
>
> This is formal notice that you are to begin Bench activities participation in full no later than tomorrow or escalation will be initiated.

(*Id.* at 17-18 of 31.)

Plaintiff claims that after receiving the above email that she "wrote to both management and HR explaining that she felt the performance notice was simply to intimidate or harass her because of the disability." (Dkt. 55-2 at 3 of 13.) But, such an email, even if written,[2] is not

---

[2] Despite filing an incredibly detailed Charge with long quotes from a number of emails, the Charge contains no mention of the email that is supposedly the basis of this claim, and Plaintiff's Fourth Amended Complaint fails to provide the specific language used in that email.

protected activity because there is *no reasonable, good faith basis* for thinking the Performance Deficiency Notice violated the ADA.  From her own allegations, it is clear that the Deficiency Notice was only provided after Plaintiff failed to perform the required bench activities, and after she failed to heed repeated instructions to do so by her employer.  Because Plaintiff lacked a good faith reason to believe the Deficiency Notice was illegal under the ADA, rather than a typical warning document given for poor performance, her alleged September 23 email is not protected activity.

Furthermore, Plaintiff has failed to establish the causal connection element as well. Plaintiff states that on October 1, 2021, her compensation was reduced by 32 hours.  (Dkt. 55-2 at 3 of 13.)  In her Charge, Plaintiff provides more detail to this allegation, stating that on October 1, Revature rejected her timesheet, and she was "instructed to log zero hours for Friday 9/17, Monday 9/20, Tuesday 9/21, Wednesday 9/22."  (Dkt. 55-3 at 21 of 31.)   In other words, Plaintiff's compensation was not reduced; rather, Revature rejected her timesheet in which she claimed she worked 8 hours on each of those four days since she indisputably was not doing client work nor was she completing her Bench assignments.

In the Performance Deficiency Notice, the company made clear that it did not believe that Plaintiff had been working since she was instructed to do so on September 7.  (*Id.* at 17-18 of 31.) The Notice emphasized that she was re-instructed to perform her work on September 17, but that she still had not done so as of September 23.  (*Id.*)  It is thus clear that, as of the time of the Notice, Revature could find no evidence that Plaintiff had performed any work from September 17 to 22. When the company rejected a time sheet claiming 32 hours of work, Revature was acting in a consistent fashion with the understanding expressed in the Performance Deficiency Notice.

Consequently, there is no reason to believe that the rejection of her timesheet was the result of Plaintiff's alleged communication on September 23. In fact, the allegations fail to establish who Plaintiff believes was responsible for the rejection of her timesheet, and whether that person was even aware of the alleged communication of September 23.

Because Plaintiff has not plausibly alleged a protected activity or causation, her third claim must be dismissed.

**D.**    <u>**Plaintiff Has Failed to State a Claim for Hostile Environment.**</u>

In her Fourth Count, Plaintiff asserts a claim for hostile environment. In order to state such a claim, Plaintiff must allege sufficient factual allegations to establish that: "(1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Coleman v. Kettler Mgmt.*, 2022 WL 17585780, at *6 (E.D. Va. 2022) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001)). For the reasons stated below, Plaintiff has failed to state such a claim.

    1.    <u>Plaintiff has not alleged she was a qualified individual with a disability.</u>

As noted in Section A.1-2 of this Memorandum, Plaintiff has not adequately alleged she was qualified individual with a disability under the ADA. Therefore, her alleged hostile work environment must be dismissed on this ground alone. (*See* Dkt. 38 at 14.)

    2.    <u>Plaintiff has not adequately pled severe or pervasive conduct.</u>

In order to plead the third element of a hostile work environment claim, a plaintiff "must clear a high bar" and "allege sufficient facts plausibly demonstrating that the workplace was permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or

pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *High v. Wells Fargo Bank*, 2023 WL 2505540, at *8 (E.D. Va. 2023). In determining whether the conduct is objectively "severe or pervasive," courts "look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019). A plaintiff cannot demonstrate severe or pervasive conduct by relying on "sporadic incidents" which are not "extremely serious." *Britt v. DeJoy*, 2022 WL 4280495, at *3 (4th Cir. 2022).

As best as can be discerned, Plaintiff appears to rest her claim on two incidents, both of which preceded Plaintiff's request for a reasonable accommodation:

(i) On July 26, 2021, an (unnamed) Revature employee allegedly asked Plaintiff before an interview, "how do you expect to do an interview using text?" Plaintiff offered an explanation, and then proceeded with the interview. (Dkt. 55-2 at 4 of 13.)

(ii) On July 29, 2021, Plaintiff's manager allegedly asked, "how long are you gonna have this problem?" referring to Plaintiff's alleged issue with speaking. (*Id.*)

Neither of these queries from employees trying to understand the nature of Plaintiff's alleged condition constitute the type of conduct that can support a harassment claim. First, neither of these questions are objectively derogatory in nature. Second, even if they were, at most they constitute the type of sporadic incident that is not capable of demonstrating a hostile environment. Consequently, this claim must be dismissed as well.

### E.   Plaintiff Has Failed to State Claims for Retaliation or Interference Related to the Rejection of her Portfolio.

In her Fifth Count, Plaintiff asserts a claim for "Portfolio Rejection as Retaliation or Interference after Reporting "Abusive Behavior" to HR." (Dkt. 55-2 at 5 of 13.) This claim must be dismissed both for failure to exhaust administrative remedies and because Plaintiff has failed to state a claim.

1.      Plaintiff's claim must be dismissed for failure to exhaust administrative remedies.

For the same reasons explained in Section C.1 of this Memorandum, Plaintiff's claims must be dismissed for failure to exhaust administrative remedies, as this retaliation or interference claim was also not properly preserved in her Charge of Discrimination.

2.      Plaintiff has not adequately pled retaliation based on the rejection of her portfolio.

Even if Plaintiff had preserved the retaliation claim in her Charge, this claim would still be subject to dismissal for failure to state a claim.  As noted, in order to state a claim for retaliation under the ADA, a plaintiff must plead sufficient facts to plausibly show, "(1) that they engaged in protected conduct; (2) suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action." *Jones v. HCA*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014). An "adverse action" is one that "adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).  In order to plead causation, a plaintiff must allege sufficient facts to show that the protected activity was the "but for" cause of the adverse action. *See Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 234 (4th Cir. 2016).

In its prior ruling, the Court properly held that the rejection of her portfolio was not an adverse action.  (Dkt. 38 at 17.)  Nothing in the Fourth Amended Complaint alters that conclusion.  Likewise, Plaintiff's allegations are insufficient to demonstrate that any protected activity was the "but for" cause of her portfolio rejection.  Consequently, this claim must be dismissed again.

3.      Plaintiff has not adequately pled interference based on the rejection of her portfolio.

Like the retaliation claim, even if Plaintiff had preserved the interference claim in her Charge, that claim would also be subject to dismissal for failure to state a claim.  The Court previously set out the standard to state an ADA interference claim is that a plaintiff must plausibly allege, "(1) she engaged in an activity that is statutorily protected by the ADA; (2) she was engaged

in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate." (Dkt. 38 at 21.)  Recently, the Fourth Circuit utilized[3] the same standard in affirming the dismissal of an ADA interference claim. *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 171 (4th Cir. 2024) (citing *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545 (7th Cir. 2017) and *Brown v. City of Tucson*, 336 F.3d 1181 (9th Cir. 2003)).  In addition to those elements, a plaintiff must also "demonstrate that she has suffered a distinct and palpable injury" as a result of the interference.  *Brown*, 336 F.3d at 1193 (9th Cir. 2003).

Even assuming Plaintiff could establish the first two elements of the claim, her claim fails because she has not plausibly pled the other elements.

First, although under the ADA the "statutory term 'interfere with' is broader than retaliation, and captures 'all practices which have the effect of interfering with the exercise of rights,' . . . it is not read 'so broad as to prohibit any action whatsoever that in any way hinders a member of a protected class.'"  *Kelly*, 90 F.4th at 171 (quoting *Brown*, 336 F.3d at 1191-1192). Plaintiff alleges that on August 10, 2021 a portfolio she submitted her to manager was "rejected" because she had not included the name of the prior client she had worked for in her submission. (Dkt 55-3 at 11 of 31.)  The temporary rejection of Plaintiff's work product is not a significant enough event to constitute interference.  This is especially true given that Plaintiff was permitted to resubmit the portfolio and was allowed to easily fix the issue identified by simply adding the name of the client with whom she previously worked.

---

[3] Although the Fourth Circuit applied this standard, which originates from the *Frakes* and *Brown* cases, it did so without fully adopting that standard for future cases, because the issue had not been disputed by the parties.  *See Kelly,* 90 F.4th at 171, FN 9.

Second, Plaintiff cannot show an intent to discriminate on Revature's behalf when rejecting the portfolio. In order to do so, Plaintiff must allege facts that plausibly show Revature "engaged in this behavior in order to prevent h[er] from filing EEOC charges, requesting further accommodations, or pursuing another protected action under the ADA." *Kelly*, 90 F.4th at 171. There is no plausible basis for suggesting the portfolio rejection was designed to stop her from engaging in future protected activity.[4]

In fact, undercutting any argument that Revature was trying to stop Plaintiff from exercising her rights, the allegations demonstrate that following the alleged portfolio rejection, Revature <u>repeatedly</u> tried to engage Plaintiff in the interactive process. (*See, e.g.,* Dkt. 55-3 at 13 of 31 (on August 25, Revature provided forms for medical certification); *id.* at 15 of 31 (on September 7, 2021, Revature again asked Plaintiff to obtain and produce a doctor's note the accommodation that she was seeking); *id.* at 15-16 of 31 (on September 8, 2021, Revature emailed the forms to Plaintiff again); *id.* at 17 of 31 (on September 22, 2021, Revature emailed Plaintiff about the status of the ADA medical form); *id.* at 20 of 31 (on September 29, 2021, Revature emailed Plaintiff a final request for the forms).)

Third, Plaintiff has not adequately alleged that Plaintiff suffered any "distinct and palatable injury" because of the rejection of her portfolio.

Consequently, Plaintiff's claims in Count Five must be dismissed.

---

[4] It seems obvious that a request that Plaintiff make an easily correctable change to her work product would not likely dissuade her from engaging in further protected activity. Consequently, it is implausible that Revature's motives were discriminatory or retaliatory in making that request.

F.      **Plaintiff Has Failed to State a Claim for Interference With Her Request for
Accommodation.**

In her Sixth Count, Plaintiff asserts a claim for "Interference with Right to request
Reasonable Accommodation."  (Dkt. 55-2 at 6 of 13.)  This claim must be dismissed both for
failure to exhaust administrative remedies and because Plaintiff has failed to state a claim.

1.      Plaintiff's claim must be dismissed for failure to exhaust administrative remedies.

For the same reasons explained in Section C.1 of this Memorandum, Plaintiff did not assert
this claim in her Charge of Discrimination and, therefore, this claim must be dismissed for failure
to exhaust administrative remedies.

2.      Plaintiff has not adequately pled interference with her request for an
accommodation.

As best as can be discerned, Plaintiff's interference claim seems to be based on her
allegation that: (i) payment of her wages were delayed by Revature; and (ii) she used 32 hours of
her accrued vacation; both of which somehow interfered with her request for an accommodation.
Such a claim is inconsistent with Plaintiff's own allegations.

The following are the relevant allegations that appear to make up this claim:

- On July 26, 2021, four days *before* Plaintiff requested an accommodation, Plaintiff
received a "transition to bench memorandum" from Revature.  Plaintiff interpreted the
memo to mean that she was not "eligible for payroll until after I passed a panel."
(Dkt. 55-3 at 8 of 31.)

- On July 30, 2021, Plaintiff submitted her request for an accommodation to Revature.
(*Id.* at 12 of 31.)

- Apparently, because of her faulty interpretation of the memorandum, Plaintiff did not
submit any timesheets for July 26, 2021 until August 24, 2021, and consequently was
not paid for those weeks on the normal schedule.  (*See id.* at 13 of 31.)

- On August 24, 2021, after Revature received a complaint from Plaintiff of not being
paid, Plaintiff was told the payment issue was due to her failure to submit any time
sheets for that time period.  (*See id.*)

22

- Plaintiff eventually requested, and was paid, 32 hours of accrued vacation for the week of July 26 – July 30.  (*Id.* at 10 of 31.)  Plaintiff eventually submitted her timesheets for August 1 – 23, and was paid for her time by Revature.  (*See* Dkt. 55-2 at 7 of 13.)

Plaintiff does not appear to have suffered any actual loss of wages, and any delay in receipt of those wages appear to be the direct consequence of her own conduct in failing to timely submit her timesheets.  Further, it appears that Plaintiff was paid the vacation time she requested, and she does not claim she was told she had to use this benefit for her July time.

To the extent Plaintiff is arguing that Revature is somehow responsible for Plaintiff's failure to submit her time because of language in the memorandum, that document was provided to her *before* she ever requested the accommodation.  Obviously, the memorandum cannot constitute interference with Plaintiff's request if that memorandum was provided to her before the accommodation request was even made.  (*See* Dkt. 38 at 18 (citing *Byers v. HSBC Fin. Corp.,* 416 F. Supp. 2d 424, 438 (E.D. Va. 2006).)

Given that any delay in her paycheck was due to Plaintiff's own failures, Plaintiff cannot state an interference claims because: (i) there is no plausible basis for claiming Revature did anything to "interfere with" Plaintiff's rights; (ii) there is no plausible basis for finding that Revature was motivated by discriminatory intent;[5] and (iii) there is no plausible basis for finding that Plaintiff suffered any "distinct and palatable injury."  Consequently, her claim in Count Six must be dismissed.

---

[5] Additionally, as noted above, Plaintiff's own allegations note that Revature did the opposite of interfering with her request for an accommodation in that the company repeatedly encouraged her to submit the needed medical documentation so that it could evaluate her accommodation request. (*See, e.g.*, Dkt. 55-3 at 13 of 31; *id*. at 15 of 31; *id*. at 15-16 of 31; *id*. at 17 of 31; *id*. at 20 of 31.)

**G.**     **Plaintiff Has Failed to State a Claim for Interference Based on Revature's**
<u>**Enforcement of its Policies.**</u>

In her Seventh Count, Plaintiff asserts another claim for interference based on the alleged
"failure to respond to Plaintiff's repeated complaints about Plaintiff's supervisor Antony, as
Interference by not enforcing company policies about discrimination." (Dkt. 55-2 at 7 of 13.)  This
claim must be dismissed both for failure to exhaust administrative remedies and because Plaintiff
has failed to state a claim.

**1.**     <u>Plaintiff's claim must be dismissed for failure to exhaust administrative remedies.</u>

For the same reasons explained in Section C.1 of this Memorandum, Plaintiff's claim must
be dismissed for failure to exhaust administrative remedies, as this claim was also not properly
preserved in her Charge of Discrimination.

**2.**     <u>Plaintiff has not adequately pled a claim for interference.</u>

Even to the extent this claim was properly preserved, it must be dismissed for failure to
state a claim.

As best as can be discerned, Plaintiff's claim is premised on the allegation that she engaged
in protected activity when she "repeatedly" complained about Antony.  However, it is unclear what
internal complaints she is specifically referencing for the purposes of this claim; or, what
specifically she stated about Antony in these complaints.  Further, while Count Seven seems to
argue that Revature did not comply with its own company policies, it is unclear from the Fourth
Amended Complaint what specific company policy is at issue, or how Revature allegedly failed to
comply.  Further, Plaintiff does not identify a distinct and palpable injury related to this claim.

In sum, it does not appear that Plaintiff has plausibly alleged *any* of the essential elements
of an interference claim.  Consequently, this claim should be dismissed as well.

**H.**     **The Fourth Amended Complaint Should be Dismissed with Prejudice.**

     A district court in this Circuit may use its discretion to dismiss claims with prejudice even on an initial motion to dismiss. *See United States ex rel. Nicholson v. MedCom Carolinas, Inc*., 42 F.4th 185, 196 (4th  Cir. 2022) ("In the Fourth Circuit, district courts are not required to give plaintiffs one without-prejudice ruling on the merits before dismissing with prejudice.").  In this case, the Court has used its discretion to allow Plaintiff to revise her complaint numerous times. The instant operative complaint is now her fifth attempt to state a claim against Revature.  As explained above, she has still failed to do so.  Any effort to resurrect her claims in a 6th complaint would have to be considered futile.  "In the Eastern District of Virginia, an amendment may be considered futile where Plaintiffs have previously had two full opportunities to plead their claim." *Field v GMAC LLC,* 660 F. Supp. 2d 679, 690 (E.D. Va. 2008) (quoting *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.,* 432 F. Supp. 2d 571, 595 (E.D. Va. 2006) and *Travelers Cas. & Sur. Co. v. Danai,*  2005 WL 2045398, at *3 (E.D. Va. 2005)); *see also Hamilton v. Newby*, 2020 WL 972752 (E.D. Va. 2020) (granting Rule 12(b)(6) motion to dismiss and declining to grant leave to amend where the plaintiff has already had two opportunities to state an actionable claim for relief).

     Given the numerous chances already extended to Plaintiff, no more amendments should be permitted, and dismissal should be granted with prejudice.

## CONCLUSION

     For the reasons stated above, each of the Plaintiff's claims is flawed and should be dismissed with prejudice.

Dated: August 2, 2024                    Respectfully submitted,


        /s/ Micah E.  Ticatch
Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com

*Counsel for Defendant Revature LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2d day of August 2024, I emailed the foregoing document by

to *pro se* Plaintiff:

Danielle Taylor
3622 Old Silver Hill Road, #908
Suitland, MD 20746
t842202@gmail.com


    /s/ Micah E. Ticatch
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
mticatch@islerdare.com

*Counsel for Defendant Revature LLC*