IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Taylor
Plaintiff                          )
Vs.                                )
                                   )    # 1:22-cv-1153
Revature LLC.                      )
Defendant

---

## RESPONSE TO DEFENDANT'S UNETHICAL MOTION TO DISMISS

### I.     INTRODUCTION

This docket remains closed and the claims should be heard on the new docket. Defendant seems to be unaware of what they are even arguing- Defendant is arguing facts instead of accepting what was actually pled and arguing law against that . Notably, their discussion of the overarching legal standard, the standard of review for the motion to dismiss- it's barely mentioned.

Defendant has omitted facts which were pled clearly. The Court should consider Defendant's work product as an intentional attempt to misrepresent the full scope of my factual allegations. Because factual disputes are not grounds to dismiss at the pleading stage , it is reasonable to say Defendant is abusing the litigation process. Defendant should have strict orders to respond, ethically, to the claims on the new docket.

### II.     FACTS

On August 2, 2024, Defendant filed another motion to dismiss on this closed docket. This docket was already pending with a disciplinary enforcement motion for alleged ethical violations. Despite several warnings about frivolousness, for every single claim, Defendant re-

1

used arguments from November 13, 2023, arguments previously rejected by this Court on May 15, 2024. Additionally, Defendant's Memorandum presents my hostile environment claim as resting solely on two incidents from July.

### III.   **ARGUMENT**

The standard of review articulated by the Honorable Judge Alston  in *Dungey v. Culmen Int'l LLC,*  2022 WL 4357443 (E.D. Va. 2022) is what should be applied to a motion to dismiss 12(b)(6) at the pleading stage. Defendant's memorandum fails to apply this standard.
The standard is:

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". At the motion-to-dismiss stage, a plaintiff need only allege facts sufficient to state all the elements of the claims. The Court may only look at the Complaint and what's referenced therin. Although the Court must assess Pro se litigants liberally, this doesn't mean the Court  has to accept bare conclusory statements or unreasonable inferences. The  Court must accept as true all well-pled facts in the complaint and construe them in the light most favorable to the plaintiff. (Intervening Citations omitted).

### i. Discriminatory Termination

#### A. **Definitions**

It is unethical to re- submit the exact same arguments that were previously rejected by this Court on May 15, 2024. This problem was detailed in my memo from August 8, 2024.

## B. **Qualified individual**

For qualified individual, Defendant concedes the essential job functions but says I failed to claim that I could do anything listed. However, this argument may rise to the level of unethical misrepresentation.

I do discuss being able to complete all essential functions of the job - the complaint literally says:

> "On July 30th, Raintiff assured Defendant's HR that she could do her job. She even wrote Defendant a letter explaining all of the ways that she could do her job and how she hoped Defendant would consider the ways that Plaintiff need to communicate primarily In writing was actually a strength. She also acknowledged the accommodation request challenged some deeply held communication stereotypes"

At the pleading stage, the aforequoted should be sufficient, especially because it references a letter detailing how I could do the essential functions of the job. But the Complaint goes even further:

> " Plaintiff graduated Defendants training and completed work assignments from November 2020 until June 2021.. Plaintiff also earned two industry-level certifications on the subject matter of Plaintiffs work. Plaintiff also has an extensive activity profile on the subject matter of Plaintiffs previous position that shows Plaintiff is knowledgeable and has a strong foundation with hands on-work of the subject-matter."

These facts also show how I pled that I could do the job with or without a reasonable accommodation. My education and experiential background, although not expressly tied to the job functions, do support the other facts as it relates to being qualified for the position. Additionally, there's my discussion of my willingness to continually improve and contribute:

> "I enjoy working and would have done everything to continuously improve and contribute if I had a willing partner."

Because of these identified facts, Defendant's argument about the complaint having zero factual allegations- it  may be an unethical misrepresentation of the complaint. The misrepresentation is

3

in terms of factual omission with respect to Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct, Virginia State Bar.

### C. <u>Meeting employer's reasonable expectations</u>

**Importantly, defendant doesn't cite any case in this section.  Defendant position is distilled to the following:**

#### 1. <u>Allegedly, I wasn't meeting expectations by the simple fact that I was on the bench</u>

In the Complaint, specifically in the EEOC Charge,  I discussed being concerned about the Defendant's policy that gave them complete discretion over work placement and any training. So they could pull me off of the client placement that I was on, or put me on a client placement at all, for any reason at all. This was the fine print of their policy. The facts here need to be developed and I should be permitted to do so. For example, I have no clarity as to why I was removed from the client I was already on?

Furthermore, how can the defendant say  (1) being on Defendant's bench meant I wasn't meeting the expectations but (2) the first day on the bench I had a genuine opportunity to interview for a job with a client? In other words, if being on the bench indicated I wasn't meeting expectations, why was I interviewing with a client?  Defendant is the one who took me off the client I was on.

#### 2. <u>The Defendant allegedly wasn't generating revenue from me being on the bench</u>

I don't how the Defendant generates revenue. Especially because this job was presented to me as a two-year trainee program. How much revenue I did or didn't generate wasn't something I was privy to. For all I know , this company is the beneficiary of a public or private program that gives them money based on how many people they were 'training'. **<u>Any revenue generation</u>**

**facts are facts that should be developed through discovery. Here, Defendant is trying to add facts into the Complaint that just aren't there.**

3. **I received "a number of directives and warnings" stating I was allegedly failing to participate in activities that were allegedly planned for me.**

I pled I was attending all activities I was asked to attend at the time of termination. This is even in the concise version of the claim. Defendant's position on directives and warnings for employer's expectations is another example of a possible candor violation. Arguing facts themselves, instead of testing the legal sufficiency of the facts that were actually pled, Defendant leaves out critical facts that were pled.

Also in the concise section of the claim From my complaint:

"The manager who terminated her is the manager who essentially stopped all communication with her after describing her disability as a problem, **ignored her communications about day-to-day responsibilities,** required her to go through multiple so-called panels because of the audio even though Plaintiff had received notice that her first panel was successful. This manager said they were simply enforcing a policy on or around November 3,2021 that she be terminated because she'd been on the bench for 100 days or more, except that for 60 of those days plaintiff was blocked from all day to day activities."

It's clear that I pled I was reaching out to them and they weren't answering me. By reciting a cherry-picked version of what was actually pled, Defendant is misrepresenting the factual scope of my allegations.

Although Defendant may not like these facts, or even agree with them, they must at the very least acknowledge what's clearly articulated. Thus, it is reasonable to characterize Defendant's work product as intentional misrepresentation. Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct, Virginia State Bar.

4. **Because I allegedly refused to interview for a temp agency with no determined contract length.**

Here, Defendant's position on employer's expectations is again arguing facts themselves, instead of accepting the facts that were pled.

The facts must be read most favorable to me. The fact is there was no interview scheduled., They are the ones who set the interviews up, I had no say on whether an interview was scheduled or not. And I certainly had no say who they shared my portfolio with. This is why I didn't understand they expected me to interview for the temp agency. Also a temp role with not even a minimum determined length is a dramatically different opportunity compared to a two-year trainee program- and for someone just starting their career, it's a lot worse. Previously, all of the positions were for permanent roles.

### D.  Facts supporting the inference of discrimination

Defendant cites one case here, the *Dungey* case. Defendant's position can be distilled to the following:

1. Defendant sent me ADA medical certification forms
2. Allegedly Defendant reminded me several times about ADA medical certification forms ( they are arguing facts again here)
3. Defendant feels they engaged me in an interactive process
4. Defendant concluded they couldn't move forward with the accommodations request because allegedly I refused to provide requested information. (Arguing facts again here).

The four facts are cherry picked facts. The complaint clearly pled  Manager describing  me using text to speak instead of vocal speech as a problem,  I then  requested the accommodation from HR, then communications from this manager on day to day activities stopped and communications from HR stopped. Later, once they had resumed communication with me, the manager  reached out to tell me I needed to redo a task that they call  panel[1]. He said the audio

---

[1] Their meaning of the panel changed once I requested the accommodation. Previously it was a meeting with one person where I could type like chat messages but then after I requested the accommodation it was without any live person and they wanted pre-recorded audio clips and

was not clear even though I was previously informed there was a successful result in the first one. When this same manager told me my employment was ending, it was not because I allegedly refused any interview, but because they had no more clients for my skill set and there was a policy of employment ending after 100 days on the bench - but for 60 of those days- those were days when I was reaching out to HR and Management, and it was them who wasn't answering me. Although I followed up about bringing medical documentation in person, the HR person never responded- but that person was copied on the separation email.

I found other people who said they lost their employment with Defendant because of their disabilities, or that Defendant generally doesn't do reasonable accommodations (the online reviews). There's also my experience in their training where Defendant told me they would consider 100% text communication to mean that Plaintiff was unable to work in the field at all.

These aren't even arguments , conclusions, or inferences- **these are simple facts**. And actually, these aren't even all the facts, there's the events from October 14 and 15 that can make the inference even stronger. At the pleading stage, all this should be more than enough.

Although Defendant may not like these facts, or even agree with them, they must at the very least acknowledge what's clearly articulated. Thus, it is reasonable to characterize Defendant's work product as intentional misrepresentation. Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct, Virginia State Bar.

**ii. Failure to Accommodate**

A. **Definitions**

This was detailed in my memo from August 8, 2024.

B. **Qualified individual**

---

removed everywhere for text. Did they do this to everyone or was it just me because I'd requested to primarily use text instead of vocal speech? There's a lot to be questioned here.

Again, I did plead that I am a qualified individual. Please see III(i)(A).

## C. <u>Notice</u>

Defendant again misrepresents the complaint by omitting facts that were pled.

In the Complaint I write :

" Plaintiff asked the Defendant multiple times if she could bring medical documentation in person to support a reasonable accommodations request but the Defendant never answered her."

**<u>It's a plain and simple fact pleading that Defendant has ignored. A 12(b) motion is supposed to test the legal sufficiency of the claim- it's not a tool for disputing factual allegations</u>**.   Although Defendant may not like these facts, or even agree with them, they must at the very least acknowledge what's clearly articulated. Thus, it is reasonable to characterize Defendant's work product as intentional misrepresentation. Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct, Virginia State Bar.

There's also the fact that I had permission  in training so that I could ask all questions in writing instead of in vocal speech. There's also the fact I had permission during their "staging" process to communicate my status in writing to my manager instead of using vocal speech. There's also the fact that I'd been using text instead of vocal speech for the previous 8 months on an everyday basis. There's also the fact that Defendant's own employees pointed out my difficulties with vocal speech during training. There's also the fact that my disability is something people can see and hear, specifically when it comes to vocal speech.

I am not disputing that sometimes medical certification is necessary but the interactive discussion isn't only about medical documentation. It's supposed to be about the work and what will or won't work for all parties. It's supposed to be back and forth. I understand their position is 'although we had some arrangements previously, medical documentation was needed to make it official'. I said ok I will get you documentation but asked can we please meet in person. They

could have said yes or no. If they said yes, I don't think we'd be here reading this case. The problem is they said nothing, even though I continued to follow up. This is why I say they cannot argue the complaint fails to allege they had no notice.

### iii. Retaliation for complaining about discrimination resulting in deduction of compensation October 1, 2021

#### A. Exhaustion of administrative remedies

This was detailed in my memo from August 8, 2024.

#### B. Protected Activity

Defendant's argument here is another example of improper omission. When I told HR and management that I felt the performance deficiency notice was issued to intimidate or harass me about the disability, I explained I'd been reaching out to both HR and management with no response. I told them it was crazy-making behavior to (1) not answer my communications about participation then subsequently (2) tell me that I'm not participating. This is me very clearly pleading that I was reaching out to them and they weren't answering me.

Defendant's bad faith argument seems to have ironically been made in bad faith. I acted in good faith, I continuously reached out to them and they were not responding. What would you think if you were asked to provide information about your disability but then your employer (both management and HR) stopped answering you about participation expectations and then you received a deficiency notice for not participating?

Although Defendant may not like these facts, or even agree with them, they must at the very least acknowledge what's clearly articulated. Thus, it is reasonable to characterize Defendant's work product as intentional misrepresentation. Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct, Virginia State Bar.

#### C. Causal Connection

The causal connection is that I was told if I 'resumed participation' , no further escalation would come. When I continued to demand HR acknowledge my complaints about management intimidating or harassing me- my hours were cut even though I did everything they'd asked.

**Defendant says they cut the hours because I wasn't meeting expectations that's not true. What was I doing to meet expectations while Defendant was not responding to my communications?**

I was working on the next level for certification for my technology specialty. The subject matter is like you can be certified for job y at x different levels**. So even though Defendant wasn't answering me, I was still working on my skills. Even though, I had already earned the two that were required, I was trying to go for a third. I talk about this in the EEOC Charge. Getting the certificates was important part of being eligible for work and although I didn't expressly state that- it is reasonable to infer. In the complaint, I described it as a two-year trainee program and talked about earning two industry-level certifications on the subject matter of the position..**

**iv. Hostile Environment**

Defendant's position here doesn't even warrant an answer. It should have been crystal clear to Defendant's attorneys that the hostile environment claim is not solely based on the two incidents, from 7/26/21 and 7/29/21. Their response to my hostile environment claim is another example of unethical misrepresentation.

_*I want to highlight what I think would be a weak argument but not an unethical misrepresention to show a contrast. Let's say Defendant's argument was: the two July events were minor events, cessation of communication for long periods of time is not something that can contribute to a hostile environment, the manager insisting that I redo the so-called 'panel'*_

*because of audio issues didn't constitute harassment, and any events in September or October*

*are unrelated. Although not conclusive of everything I pled, it would at least address the*

*alleged claim. <u>Defendant's decision to present the claim as "resting soley on the events from</u>*

*<u>7/26/21 and  7/29/21" is an intentional presention of the claim that fundamentally changes the</u>*

*<u>claim itself.</u>*

. Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct,

Virginia State Bar.

### v.  Portfolio Rejection as Retaliation or Interference after Reporting "Abusive Behavior" to HR

#### A1. Exhaustion of administrative remedies (Retaliation)

This was detailed in my memo from August 8, 2024.

#### B1. Adverse action (Retaliation Portfolio Rejection)

Here, Defendant omits facts, references  the Court previously held that the portfolio rejection

wasn't an adverse action, and in a most conclusory fashion of improperness says: nothing has

changed. Their conclusory statement on 'the other decision still applies' doesn't quote the

decision or engage in any legal analysis. So, let's look at what this Court actually said.

On Page 17 of the September 2023 order, the Honorable Judge Alston wrote the following:

Plaintiff's allegation regarding denial of her portfolio fails, as Plaintiff does not allege it
had a significant detrimental effect on Plaintiff's employment. Leggo, 2023 WL 1822383, at *5
(E.D. Va. Feb. 7, 2023) (finding no adverse action where plaintiff failed to allege that the decline
in his duties and opportunities had any negative impact on his employment).

Now, in the new docket, my complaint very clearly adds the following in the concise state

statement for this claim in the Complaint:

- "According to Defendant's policies, the portfolio approval was necessary for client
  eligibility. So, it was critical for Plaintiffs job."

- "Even when Plaintiff changed the portfolio again, this manager never issued the approval and the portfolio remained unapproved throughout the remainder of Plaintiffs employment. Because the portfolio approval was necessary for client eligibility, this really caused Plaintiff extreme distress."
- "Plaintiff ultimately reached out to HR about the portfolio rejection explaining she felt like her employment was threatened, that she felt like she was already fired because her manager wouldn't communicate with her, and that she was humiliated."

The only part here that is a conclusion is where I say "it was critical for the job" but this is a

reasonable inference from the fact that "According to Defendant's policies, the portfolio approval

was necessary for client eligibility". The facts must be read in my favor. Defendant's omissions

here may rise to the level of unethical misrepresentation. . Rule 3.3(a)(1). See also Comment 3,

page 177, Virginia Rules of Professional Conduct, Virginia State Bar.

### C1. Causal link (Retaliation Portfolio Rejection)

Defendant's articulated test on retaliation isn't even the correct standard..

Importantly, this Court should acknowledge the distinction between "the" but-for cause and "a"

but-for cause. The talk of retaliation in the *Gentry* case is in footnotes[2]. Also note the Court had

to correct itself in that case, just like the Court should do in this case. I actually should have

included this in my vacatur memo and is yet another point supporting vacatur.

In the recent *Kelly* case, the Court expounds upon the non-trivial distinction between "the" and

"a" when it comes to causation for discriminatory discharge versus causation for retaliation:

"Although there is some evidentiary overlap between discrimination and retaliation, discrimination and retaliation claims rely on different theories of motive. "[T]he ultimate question in every employment discrimination case.... is whether the plaintiff was the victim of intentional discrimination.". In contrast, "[t]he very premise of a retaliation claim is that the employer has subjected an employee to adverse consequences in response to her complaint of discrimination." An employer who retaliates against an employee for lodging a complaint is not

---

[2] the Defendant could use to explain their position as a mistake and not a misrepresentation but that would fail because they cited the *Kelly* case- why say the-but4 but then correct in the footnotes as a-but4. This makes no sense. I can understand the jury instruction bit being a footnote but the actual opinion should've stated the correct standard. I guess it was a typo but any cases that cited that case probably should've caught that.

necessarily motivated by discriminatory animus. ("The necessary causal link is between the employee's complaint and the adverse action, not between her sex and the adverse action.").

*Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 171 (4th Cir. 2024) (intervening Citations omitted).


Defendant actually cited *Kelly* so I think it is reasonable to describe their presentation of the retaliation causation standard as misrepresentation- and again doubling down on Court's mistake instead of correcting it, or at least arguing the proper standard themselves. Also notable, there's the case of *Smith v. CSRA*. Here, they've again failed to disclose controlling precedent materially adverse to their position.

"[E]stablishing a `causal relationship' at the prima facie stage is not an onerous burden."Indeed, "very little evidence of a causal connection is required to establish a prima facie case of retaliation. "A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes. A plaintiff may establish the existence of facts that `suggest[] that the adverse action occurred because of the protected activity. (recognizing that relevant evidence may be used to establish causation)). "A plaintiff may also show that `the adverse act bears sufficient temporal proximity to the protected activity. "The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action."


*Smith v. CSRA* 12 F. 4th 396 - Court of Appeals, 4th Circuit, 2021. (Intervening Citations omitted)

Defendant's argument on causation and their failure to address the aforecited may also trigger Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct, Virginia State Bar.


### A2. Exhaustion of administrative remedies (Interference Portfolio Rejection )

This was already discussed.  Please see III, iii(A).

### A3. The standard for interference

In *Kelly*, the Court used the following standard for interference:

(1) [*She] engaged in activity statutorily protected by the ADA; (2) [*She] was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of [*her] protected activity; and (4) the defendants were motivated by an intent to discriminate.

Although the *Kelly* Court did leave some room for argument, they suggested the rule should be less exclusionary, not more exclusionary. This was in a footnote from the *Kelly* case.

[9] The Seventh Circuit adopted the foregoing four-factor test from Fair Housing Act ("FHA") cases on the grounds that the ADA's interference provision, 42 U.S.C. § 12203(b), closely mirrors the FHA's interference provision, 42 U.S.C. § 3617. See Frakes, 872 F.3d at 550; see also Brown, 336 F.3d at 1191. But because we have yet to interpret the FHA's interference provision, that same line of reasoning may not yield the same result. **Moreover, at least one Circuit reads the FHA's interference provision in a manner that does not require discriminatory motive**. See Revock v. Cowpet Bay W. Condo. Ass'n, 853 F.3d 96, 112-13 (3d Cir. 2017). As the parties did not brief or argue the parallels between the FHA and the ADA, or the different prevailing interpretations of both provisions, we reserve this issue for another case.

So a holistic examination of other circuits(not just one circuit ) along with an actual analysis on congressional intent, not just the word "interference" . The *Kelly* Court also suggested a comparison between FHA and ADA. But again, most importantly, the Court suggested the rule should be less restrictive, not more. Defendant's argument that a fifth elememt should be added may constitute a misleading argument if the 9th circuit rule is not a prevailing interpretation. Speaking of candor,, Defendant's section again omits important facts:

1.  The portfolio was never approved,

2.  No client interview was scheduled for me from then until the time I was terminated

3.  This portfolio rejection came within 24 hours of me emailing management telling them I felt they weren't adhering to legal obligations. (This email to HR and management is protected activity in itself)

4. The reasonable accommodation was allegedly pending at this time.

5. They sent me incomplete paperwork in medical certification

6. In the end, I was the one who followed up with them about medical documentation, not the other way around.

See Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct, Virginia State Bar, for why these omissions are problems.

Although I can articulate the distinct and plausible injury, I don't think there is a legal basis to do so. Defendant's argument is potentially in conflict with the 4th Circuit *Kelly* case. I do however think it's valid to do what the Kelly Court suggested in terms of briefing before deciding on a different standard.

### vi. Forced use of all accrued vacation time and abnormally excessive delay in acknowledging timesheet concems as Interference with Right to request Reasonable Accommodation

### A. Exhaustion of administrative remedies

This was already discussed. Please see III, iii(A).

### B. The defendants coerced, threatened, intimidated, or interfered on account of protected activity.

Their section on this point presents more ethical problems. First, it shows how Defendant is having total disregard for legal standards on a 12(b)(6) motion. They are not entitled to the conclusion that I had a faulty interpretation of their policy, that is not a fact. What I pled is that their policy literally said I wasn't eligible for pay until I passed the panel. The facts are supposed to be accepted as true and interpreted in my favor. They are making a misleading argument by not referencing the full scope of the rule for 12(b)(6) review. Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct, Virginia State Bar.

Second, their argument that I had a faulty interpretation of the memo, to make this argument they should have done some investigation- **had they done proper due diligence they would not be making this argument**. They also make per se factual misrepresentations - so this one isn't even misrepresentation by omission- it's pure misrepresentation.

From the claims section of my complaint:

> On July 30.2021, Plaintiff wrote to Defendant's HR asking if she hadn't received a work schedule because of her disability. Plaintiff explicitly stated she was concerned because she understood the situation to be resulting in an entire week of lost pay as of that date. Despite several attempts on Plaintiff's part to follow up about this, the HR representative did not recognize complaints about this until August 23,2021.

> Usually Plaintiff would have flooded me with messages about requirements / meetings and time sheet submissions. All of this had stopped. Because Plaintiff's manager had also stopped responding to Plaintiff's direct communications after describing her disability as a problem, Plaintiff felt like she was already terminated. The fact that HR wouldn't even acknowledge her time sheets concerns made things worse.

> _**Although the hours between August 1 2021, and August 23,2021 were eventually processed, it was only after HR confronted me about reporting discrimination at the previous client**_. So the Defendant directly tied any acknowledgement of my accommodation request and my pay concerns to the fact that I reported discrimination at the previous client. _**Plaintiff initially reached out to HR about the hours on July 30th and followed up multiple times with no response until August 23,2021**_. Nearly a month having gone by, I was feeling like they'd already terminated my employment. Additionally, _**I was never reimbursed for the hours for the week of July 26,2021. HR never I acknowledged my concems that I lost an entire week of pay that week.**_ Defendant forced to use all of my accrued time off because management had stopped communicating with me, didn't answer when I asked about day-to-day expectations, and HR also never acknowledged the issue even though I brought it up several times.

I also want to add that the EEOC Charge literally said the following:

The "Transition to Bench" memo said I wasn't eligible for pay until I passed the panel.

It is true that no one literally said I had to use the vacation time. I was forced to use the vacation time- this is a reasonable conclusion from what I pled- they sent me a memo saying I

16

wasn't eligible for pay until I passed a panel and then they stopped contact with me for almost a full month, right after responding to their information request, even though I was continuously reaching out. Also a notable fact is previously I had daily (if not multiple times per day) communication with them so the change was dramatic.

I also want to clarify that I didn't request the vacation or sick time hours for approval- it was something I had access to log myself in their computer application.

### C.  The defendants were motivated by an intent to discriminate

They still have nothing to say about the time between July 30 and August 23.

Although the hours between August 1 2021, and August 23,2021 were eventually processed, it was only after HR confronted me about reporting discrimination at the previous client. The aforesaid is a fact that supports the following: Defendant directly tied any acknowledgement of my accommodation request and my pay concerns to the fact that I reported discrimination at the previous client.

This one probably rises to the level of retaliation, not just interference. Where I feel the portfolio rejection claim is retaliation or interference, I feel this claim is retaliation AND interference.

### vii. The failure to respond to Plaintiff's repeated complaints about Plaintiff's supervisor Antony, as Interference by not enforcing company policies about discrimination

This one is probably retaliation and interference as well.

### A.  Exhaustion of administrative remedies

This was already discussed. Please see III, iii(A).

## B. Summary of elements

Prong 1 is that I requested the accommodation, prong 2 is that I complained about having a hostile environment as a result of the request, prong 3 is the HR failure to respond to my complaints about Antony even though they had policies about the prohibition of discrimination, prong 4 is the more I complained, the more management increased hostility.

There is no legitimate reason I should respond to Defendant's position that a fifth element should be added. The *Kelly* Court suggested element 4 should be removed- they didn't say keep 4th element and a 5th.

## C. Defendant response here was improperly reductive.

Although more facts can be cited to support this claim, the following is more than enough at the pleading stage:

- July 28- Defendant allegedly first became aware I filed a complaint of discrimination at their client

- July 29- Manager described me using text to speak instead of vocal speech as a problem.

- July 30 - I wrote to HR explaining the accommodations request and that I was concerned because I still hadn't received a work schedule.

- August 8- With no response, I reached out to HR again explaining I still hadn't heard from the manager, or the panel team.

- August 10- Still no response, I wrote to HR and management about "abusive behavior", telling them I felt "legal obligations" were being ignored.

- August 16 - HR writes back telling me they were aware I'd complained about discrimination at the initial client but fails to address everything I'd written to her about on July 30, August 8, and August 10th.

- **On or around September** 29th- For the second time, I asked HR about bringing medical documentation in person and said I needed HR to at least address my reports of hostility from management. .

- October 5 - the manager tells me I need to redo the panel because the audio wasn't clear, even though I had received notice the first one was successful.

18

- HR never responded to my follow up about bringing medical documentation in person and continued request to at least acknowledge my complaints about hostility from management

These omissions are problems. Although Defendant may not like these facts, or even agree with them, they must at the very least acknowledge what's clearly articulated. Thus, it is reasonable to characterize Defendant's work product as intentional misrepresentation. See Rule 3.3(a)(1). See also Comment 3, page 177, Virginia Rules of Professional Conduct, Virginia State Bar.

## V. RESPONSE TO DEFENDANT'S CONCLUSION

Defendant's argument that I've had five attempts to state my claims against Defendant is not supported by the record. Their recent response shouldn't count towards anything because it's permeated with misrepresentations on facts and law. A 12(b)(6) is not the proper tool to argue facts, they were supposed to accept what I pled and argue against that. My position is: until the Defendants respond to the complaint on the new docket, or on this docket if the Court says- with a response that adheres to professional standards of ethics- Until that time- I haven't even had one full hearing on my claims.

## IV. CONCLUSION

Although I have not moved for F.R.C.P. Rule 11 Sanctions, and moved for disciplinary enforcement instead, the Court can and should, on its own, and at the proper time, invoke Rule 11 to supplement the disciplinary enforcement. Defendant's decision to resubmit the exact same arguments for definitions and administrative remedies is sanctionable. Defendant's decision to present the hostile environment claim as resting solely on the events from 7/26/21 and 7/29/21 is sanctionable. Defendant's decision to use their motion to argue facts themselves, instead of

arguing the facts pled to the law- this too is sanctionable conduct. Defendant's decision to present the causation standard for retaliation as being the same causation standard that is used for discriminatory discharge, even though this is in direct conflict with a binding case cited by Defendant - this too is sanctionable. There's so much here and the list goes on. I can see  more than what I've already articulated.

   For these reasons,  I ask the Court to order the Defendant to respond to the Complaint on the new docket with strict orders to adhere to all rules. I also ask the Court to fine the Defendant's law firm- with some of the money going to me, and some of the money going to the Court- but most of the money going to me. It's been *excessively* **burdensome for me to pursue this case.** **There's no scenario that justifies what has occured here. I have so much more to say.**

## CERTIFICATES

### A. Truthfulness

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and Plaintiff served Defendant with a copy of this document on the same day.

### B. Ghost Writing

I certify under penalty of perjury under the laws of the United States of America, pursuant to Local Rule 83.1(M), no attorney has prepared, or assisted me in the preparation of this document.

Date: August 19th, 2024

Very Respectfully,

Printed Name: Danielle Taylor

Signed Name: