IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DANIELLE TAYLOR, )<br>)<br>  Plaintiff, )<br>)<br>  v. )<br>)<br>REVATURE LLC, )<br>)<br>  Defendant. ) | Civil Action No. 1:22-cv-1153 (RDA/WBP) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on: (i) Plaintiff Danielle Taylor's Motion for Sur-Reply (Dkt. 67); (ii) Defendant Revature LLC's Motion to Dismiss (Dkt. 57); and (iii) Plaintiff's *pro se* Motion to Vacate (Dkt. 48).[1] The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motions, together with the Amended Complaint (Dkt. 55); Defendant's Memorandum in Support (Dkt. 58); Plaintiff's Opposition (Dkt. 63); Defendant's Reply in Further Support of Defendant's Motion to Dismiss (Dkt. 65), and Plaintiff's Memorandum in Support of her Sur-Reply (Dkt. 68), the Court DENIES Plaintiff's Motion for Leave to File a Sur-Reply, GRANTS Defendant's Motion to Dismiss, and DENIES Plaintiff's Motion to Vacate for the following reasons.

I.   BACKGROUND

A. Factual Background

Plaintiff is a software developer who was employed by Defendant from July 2020 until November 2021. Dkt. 55-1 at 1. Plaintiff alleges that she has a disability "that restricts her ability

---

[1] Plaintiff is proceeding *pro se* in this action.

to communicate and specifically impairs her use of vocal speech." Dkt. 55-1 at 1. In her Amended Complaint, Plaintiff alleges a litany of grievances arising against Defendant from her final five months of employment with them. Construing Plaintiff's *pro se* pleadings liberally, Plaintiff filed this amended action asserting several claims against Defendant under the Americans with Disabilities Act of 1990 (the "ADA") including: (1) discriminatory discharge; (2) failure to accommodate; (3) retaliation; (4) hostile environment; and (5) "interference." Dkt. 55-1.

Defendant is an information technology provider that staffs its clients with software programmers. Dkt. 55-1. Employees at Defendant undergo a 10 – 12-week training period prior to being placed with one of Defendant's corporate clients. *Id.* After the training period, employees are then assigned to one of Defendant's corporate clients. *Id.* If there are no client assignments available, Defendant may place employees on the bench. *Id.* When employees are placed on the bench, they remain on pay status but are paid at a lower rate. *Id.*

Plaintiff began working for Defendant in July 2020 and completed her initial training period in September 2020. Dkt. 55-1 at 1. During this period, Plaintiff communicated with Defendant through a combination of oral and written communication, after Plaintiff was informed that text-to-speech was considered "100% text communication" and signaled that "Plaintiff was unable to work in the field." *Id.* Following the completion of her training period, Plaintiff underwent a brief staging period before being placed with one of Defendant's clients on November 9, 2020. *Id.* at 2. Defendant's client assigned Plaintiff to a one-year training period where Plaintiff would work with a simulated client. *Id.* Plaintiff worked for the client until July 2021, when the project was terminated. *Id.* Plaintiff alleges that her termination by the client was the result of discriminatory conduct after she had expressed her preference to communicate with the client

2

primarily through written communication. *Id.* Plaintiff was subsequently placed back under the direct supervision of Defendant, and on July 30, 2021, she was placed on the bench.

Plaintiff appears to take issue with Defendant's handling of her request for disabilities and request for accommodations in the workplace. In July 2021, Plaintiff alleges that her manager described her medical condition as a "problem." *Id.* Plaintiff assured her manager that she could do her job and requested that she be permitted to communicate in writing or text-to-speech. *Id.* Plaintiff alleges that Defendant did not respond to her emails concerning accommodations until August 23, 2021, and that her manager had repeatedly referred to her disability as a "problem." *Id.* at 4.

Plaintiff alleges that she felt as if she had been terminated in August 2021 because of the failure of Defendant to respond to her requests or other emails. *Id.* at 4. Plaintiff also stopped submitting her hours worked to Defendant. *Id.* In September 2021, Plaintiff reached out to human resources with Defendant to explain that Plaintiff had no work schedule, that her portfolio was unapproved, and that she had not heard back regarding her requested accommodation. *Id.* at 5. On September 8, 2023, Plaintiff received reasonable accommodation forms. *Id.*

On September 23, 2021, Plaintiff received a performance deficiency notice. *Id.* Plaintiff responded and expressed her frustration with management. *Id.* On September 29, 2021, Plaintiff received a communication from management stating that this would be the last time management would follow up about her accommodation request and indicating the need for further information. *Id.* Plaintiff responded that she did not wish to submit medical information over email and that she "wasn't comfortable sharing more information until Plaintiff's complaints about hostility from management were addressed." *Id.*

In the next pay period, Plaintiff's pay was reduced by 32 hours. *Id.* at 6. In October 2021, after conducting a practice interview for another project with one of Defendant's employees using a voice enhancer microphone, Plaintiff was informed that she would not be interviewing for the position. *Id.* Plaintiff was subsequently offered an interview opportunity with a potential client in Florida through a temp agency, which she declined to take. *Id.* In November 2021, Plaintiff was terminated. *Id.* at 7. Plaintiff then filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"). *Id.* at 8. The EEOC subsequently issued a right-to-sue letter that resulted in the filing of the initial Complaint. *Id.*

### B.  Procedural Background

Plaintiff filed a Complaint in this Court on October 13, 2022. Dkt. 1. After briefing was completed on a motion to dismiss, this Court issued a Memorandum Opinion and Order, in which the Court granted Defendant's Motion to Dismiss and dismissed Plaintiff's Complaint without prejudice on September 28, 2023. Dkt. 38. Nonetheless, the Court permitted Plaintiff to file an Amended Complaint within 30 days of the entry of that Order. *Id.* On October 27, 2023, Plaintiff filed her Motion to Amend with a Proposed Fourth Amended Complaint, which the Magistrate Judge granted on May 15, 2024, and directed Plaintiff to "file her Amended Complaint with the Clerk's office as a new docket entry." Dkt. 44. Instead of filing the Fourth Amended Complaint in this action, Plaintiff filed the Fourth Amended Complaint as a new lawsuit on May 24, 2024. *See Taylor v. Revature,* LLC, No. 24-cv-880 (E.D. Va.).

That same day, Plaintiff also filed a Motion to Vacate the Court's September 28, 2023 Memorandum Opinion and Order. Dkt. 48. Defendant opposed the Motion to Vacate on June 7, 2023. Dkts. 51, 52.[2] Plaintiff then filed her Reply. Dkts. 53, 54.

On July 18, 2024, Plaintiff filed her Fourth Amended Complaint in this action. Dkt. 55. In response, Defendant filed a Motion to Dismiss the Fourth Amended Complaint. Dkt. 57, 58. Plaintiff filed an Opposition on August 19, 2024. Dkt. 63. On August 26, 2024, Defendant filed its Reply. Dkt. 65. Plaintiff filed a Motion for Leave to File a Sur-Reply. Dkt. 67-68. On February 19, 2025, this Court issued a Memorandum Opinion and Order dismissing Plaintiff's second lawsuit. *See Taylor v. Revature, LLC*, No. 1:24-cv-00880, Dkt. 31 (E.D. Va. Feb. 19, 2025).

## II. ANALYSIS

The Court will first address Plaintiff's Motion to Vacate which seeks to vacate this Court's September 28, 2023 Memorandum Opinion and Order. The Court will next address Plaintiff's Motion for Leave to File a Sur-Reply because it impacts what the Court considers with respect to the final Motion – Defendant's Motion to Dismiss.

### A. Motion to Vacate

In support of her Motion to Vacate, Plaintiff presents three main grounds for vacating the default judgment pursuant to Rule 60(b): (i) mistake or "excusable neglect" under Rule 60(b)(1), (ii) that the judgment has been satisfied and applying it prospectively is no longer equitable under Rule 60(b)(5), and (iii) the catch-all provision of Rule 60(b)(6) for "any other reason that justifies relief." Dkt. 49. Because the Memorandum Opinion and Order was not a final order and because

---

[2] It appears that Defendant filed its Opposition twice. Dkts. 51, 52. Plaintiff therefore filed two Replies. Dkts. 53, 54.

there is no merit-worthy argument that the Memorandum Opinion and Order should be vacated, the Motion to Vacate will be denied.

Federal Rule of Civil Procedure 60(b) authorizes a district court to award relief from a final judgment or order under certain discrete circumstances. These grounds are:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged . . . or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Any relief granted under Rule 60(b), however, is discretionary. *See id.* ("[T]he court may relieve a party . . . from final judgment . . ."); *see also Neumann v. Prudential Ins. Co. of Am.*, 398 F. Supp. 2d 489, 492 & n.8 (E.D. Va. 2005) ("[T]he decision to grant or deny a Rule 60(b)(6) motion, as with all Rule 60 motions, is committed to the court's sound discretion."). The moving party "must clearly establish the grounds therefore to the satisfaction of the district court," and those grounds "must be clearly substantiated by adequate proof." *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992) (citations omitted).

As an initial matter, Rule 60(b) applies only to final judgments or orders. *See Slate v. Byrd*, 2013 WL 2147618, at *2 (M.D.N.C. May 16, 2013) ("Rule 60(b) only applies to final orders"). "A final order is one that disposes of all the issues in dispute as to all parties, and 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *In re Topper,* 23 F. App'x 127, 128 (4th Cir. 2001). Here, the Memorandum Opinion and Order specifically provided Plaintiff with an opportunity to amend. Dkt. 38 at 23. As the Fourth Circuit has recognized, an order is not a final order where "the plaintiff could save [the] action by merely amending [the] complaint." *Haile v. Kaiser Permanente Tysons Corner*, 797 F. App'x 114

(4th Cir. 2020) (internal citations omitted). Accordingly, because Plaintiff had leave to amend and did amend, the Memorandum Opinion and Order was not a final Order to which Rule 60(b) applies.

Moreover, each of Plaintiff's alleged bases for Rule 60(b) relief fails under scrutiny. Plaintiff's first Rule 60(b) argument is that the Court erred by relying on *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 (4th Cir. 2004). Dkt. 38 at 10 (citing *Rohan*); Dkt. 49 at 3 (arguing that *Rohan* is not good law). But the Court cited *Rohan* merely for the uncontroversial principle that an ADA plaintiff must allege that they are a qualified individual with a disability. Dkt. 38 at 10. This remains the law. *See, e.g.*, *Kelly v. Town of Abingdon, Va.*, 90 F.4th 158, 169 (4th Cir. 2024) (citing *Rohan* and recognizing that plaintiff must allege that "he was a qualified individual with a disability"). Thus, Plaintiff has failed to establish that the Court erred in citing *Rohan* for that principle.

Plaintiff next argues that a Sur-Reply brief that she filed should not have been struck by the Court in the Memorandum Opinion and Order. Dkt. 38 at 9; Dkt. 49 at 3-4. Plaintiff's argument in this regard suggests that it was "too harsh" for the Court to strike the Sur-Reply and that the Court should have just issued Plaintiff a warning. Dkt. 49 at 3-4. But Plaintiff makes no argument regarding how this impacted the Court's ultimate disposition of the case. Moreover, because Plaintiff did not intend to violate the Local Rules does not mean that the unauthorized Sur-Reply should not have been stricken. As the case law cited by the Court in its Memorandum Opinion and Order indicated, this Court generally strikes unauthorized sur-replies when they are filed in violation of the Rules. Dkt. 38 at 9 (citing *Jones v. Marriott Int'l, LLC*, 2021 WL 5039249, at *6 (E.D. Va. 2021)).

Plaintiff's Rule 15 argument is likewise unavailing. Plaintiff appears to suggest that she should be permitted one attempt at amending each claim. Dkt. 49 at 4 ("The amendment for the

7

interference claim should have been valid because interference wasn't part of the lawsuit when amendment on the previous pleading happened."). But Rule 15 is clear: "A party may amend its *pleading* once as a matter of course." Fed. R. Civ. P. 15(a)(1) (emphasis added). Thus, Plaintiff is incorrect when she suggests that "one amendment per case is the rule is actually not in the rules." Dkt. 49 at 4. Thus, the Court correctly struck Plaintiff's amended complaint. Dkt. 38 at 8. In any event, Plaintiff was not prejudiced by the Court's ruling, because the Court permitted Plaintiff to file a further amendment.

The Court is puzzled by Plaintiff's final argument. Plaintiff asserts that the Memorandum Opinion and Order should be vacated because "the judgment has been satisfied." Dkt. 49 at 5. But, as Defendant correctly notes, satisfying a judgment refers to paying an amount awarded. A dismissal order cannot be satisfied.

In sum, because Plaintiff raises no meritorious basis for Rule 60(b) relief and because the Memorandum Opinion and Order is not a final order, the Motion to Vacate will be denied.

B.     Motion for Sur-Reply

Plaintiff seeks to file a Sur-Reply in opposition to Defendant's Motion to Dismiss. Thus, before the Court considers the Motion to Dismiss, the Court must first decide whether a Sur-Reply is appropriate. Because Plaintiff has not suggested that a Sur-Reply is necessary to address matters in dispute in the Motion to Dismiss, the Court will deny the Motion.

Pursuant to E.D. Va. Local Rule 7, Plaintiff moves for leave to file a surreply. Local Rule 7(F)(1) provides that other than a motion's opening brief in support, the opposing party's responsive brief, and the movant's reply brief, "[n]o further briefs or written communications may be filed without first obtaining leave of Court." E.D. Va. Loc. Civ. R. 7(F)(1). "Accordingly, allowing a surreply is within the court's discretion." *Adams v. Applied Bus. Servs.*, 2019 WL

7817080, at *1 (E.D. Va. Aug. 30, 2019).  In deciding whether to exercise that discretion, this Court "consider[s] whether prejudice will result from the court considering a new argument without the opposing party's having an opportunity to respond." *Id.* (citations omitted).  "To cure any such prejudice, a surreply is appropriate where 'a party brings forth new material or deploys new arguments in a reply brief.'"  *Id.* (quoting *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006)).  However, an opposing party "may not submit a surreply simply because [the movant] used their reply brief to further support an argument made in their opening brief or to respond to new arguments in [the opposing party's] opposition." *United States ex rel. Carter v. Halliburton Co.*, 2011 WL 6178878, at *12 (E.D. Va. Dec. 12, 2011) (rev'd on other grounds).  Additionally, sur-replies "are generally disfavored" and should not be permitted "outside of rare instances."  *Steele v. Johns Hopkins Health Sys. Corp.*, 2020 WL 4471710, at *2 (D. Md. Aug. 4, 2020).

Here, Plaintiff requests leave to file a surreply so that she may "discuss Defendant's filings as it relates to ethics" and because Defendant's Reply was untimely.  Dkt. 68.  According to Plaintiff, Defendant's Reply was filed "after the close of business hours," and thus was not filed timely.  As the Federal Rules provide, the deadline for electronic filing is "midnight in the court's time zone."  Fed. R. Civ. P. 6.  Plaintiff's Motion asserts that her proposed surreply (which is not attached) would further expand on her argument – raised in her Opposition Brief – that Defendant's arguments are unethical.  Dkt. 68.[3]  In essence, in her surreply, Plaintiff proposes that she re-tread the arguments that she made in her Opposition to the Motion to Dismiss.  Such circumstances do not qualify as the rare instance in which a sur-reply is appropriate.  *Browne v. Waldo*, 2023 WL

---

[3] Plaintiff also raised these concerns in her "Motion for Disciplinary Enforcement."  Dkts. 60, 61.  That Motion was fully briefed and was denied by U.S. Magistrate Judge William B. Porter.  Dkt. 70.

9

2974483, at *5 (E.D. Va. Apr. 17, 2023) (denying plaintiff's motion for leave to file a surreply where plaintiff "merely attempt[ed] to 'have the last word on the matter'"); *see also Adams*, 2019 WL 7817080 at *1 (denying plaintiff's motion for leave to file surreply where they only sought to "further support an argument made in [her] opening brief"). Accordingly, the Motion for Leave to File a Sur-reply will be denied.

### C. Motion to Dismiss

Having determined that Plaintiff's Motion for a Sur-Reply should be denied, the Court next addresses Defendant's Motion to Dismiss. Defendant seeks to dismiss the Amended Complaint in its entirety. Plaintiff opposes. Because the Court determines that Plaintiff has failed to plausibly state a claim upon which relief could be granted, the Court will grant the Motion to Dismiss.

#### i. Standard of Review

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). To be sure, "the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc*., 562 F.3d 599, 616 n.26 (4th Cir. 2009) (*quoting Kloth v. Microsoft Corp*., 444 F.3d 312, 319 (4th Cir. 2006)). Typically, "courts may not look beyond the

four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (*citing Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes her filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). "This principle of liberal construction, however, had its limits." *Suggs v. M&T Bank*, 230 F.Supp.3d 458, 461 (E.D. Va. 2017), *aff'd sub nom. Suggs v. M&T Bank*, 694 F. App'x 180 (4th Cir. 2017). A *pro se* plaintiff must allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F.Supp.2d 416, 421 (E.D. Va. 1999). The Court also cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Circuit Ct. of Hampton*, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014); *see also Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

###### ii. Discriminatory Discharge (Count I)

Defendant first moves to dismiss Count I of the Amended Complaint, which raises a claim of a discriminatory discharge in violation of ADA. As the Court recognized in this its prior Memorandum Opinion and Order, to state a claim in this regard Plaintiff is required to demonstrate that (1) she "was a qualified individual with a disability"; (2) she "was discharged"; (3) she "was fulfilling h[is] employer's legitimate expectations at the time of discharge"; and (4) "the circumstances of h[er] discharge raise a reasonable inference of unlawful discrimination." *Reynolds v. American Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012); *Craft v. Fairfax County Government*, 2016 WL 1643433, at *5 (E.D. Va. 2016).

An ADA plaintiff must plausibly allege that she is a "qualified individual with a disability" 42 U.S.C. § 12111(8); *see also Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806

11

(1999). The ADA defines a disability as (1) "a physical or mental impairment that substantially limits one or more major life activities" (actual disability); (2) "a record of such an impairment" (record-of disability); or (3) "being regarded as having such an impairment" (regarded-as disability). 42 U.S.C. § 12102(1)(A)-(C); *Schneider v. County of Fairfax*, 2023 WL 2333305, at *4 (E.D. Va. Mar. 2, 2023). Although a plaintiff "does not have to provide extensive detail as to [her] medical condition," she must "plead a disability claim 'above a speculative level.'" *Hice v. Mazzella Lifting Technologies, Inc.*, 589 F. Supp. 3d 539, 547 (E.D. Va. 2022).

In the September 28, 2023 Memorandum Opinion and Order, the Court found that Plaintiff had not plausibly alleged that she was a qualified individual with a disability. Dkt. 38 at 10-14. Specifically, the Court held:

> Plaintiff alleges in her Complaint that her disability is "communication," which does refer to a major life activity, but that does not adequately describe or specify any physical or mental impairment. Dkt. 1 at 4. Further, in Plaintiff's EEOC Charge that was attached to her Complaint, Plaintiff stated that she had a "need to use written word for learning and communication purposes," Dkt. 1-1 at 8, but Plaintiff does not allege any medical condition that limits her ability to communicate. In fact, her Complaint is devoid of any reference to a particular disability or disabilities. Thus, Plaintiff has failed to allege sufficient facts to establish that any issues she has with "communication" qualify as a disability under the ADA, which is grounds for dismissal.

Dkt. 38 at 11. In her Amended Complaint, Plaintiff's only addition to her claim of having an actual disability is her assertion that:

> Plaintiff has received medical treatment for a disability that restricts her ability to communicate and specifically impairs her use of vocal speech.

Dkt. 55-1 at 1. This does not correct the defect that the Court previously identified for Plaintiff.

Plaintiff still has not stated that she has any diagnosed medical or physical condition that limits her ability to communicate. Instead, she merely states that she has a disability for which she has received medical treatment. Such a conclusory statement, without more, is insufficient to adequately plead an actual disability. *See Smith v. Virginia Dep't of Agric. & Consumer Servs.*,

12

2012 WL 2401749, at *9 (E.D. Va. June 24, 2012) ("[Plaintiff] did not identify the mental condition and made no allegations as to the extent of her mental condition or the effect it has on major life activities."); *Bakra v. RST Mktg.*, 2019 WL 3459251, at *2 (W.D. Va. July 31, 2019) ("Here, [p]laintiff alleges he has a disability but does not name the disability . . . [t]he [c]omplaint on its face is devoid of any reference to the particular disability or disabilities that form the basis for any alleged discrimination . . . ."). Thus, Plaintiff has failed to allege sufficient facts to establish that she has an actual disability for purposes of the ADA claims before the Court.

Likewise, Plaintiff's Amended Complaint does not establish a record of disability. In the September 28, 2023 Memorandum Opinion and Order, the Court rejected Plaintiff's claim in this regard because "Plaintiff has failed to allege any facts identifying a physical or mental impairment in her Complaint or provide any medical documentation of a physical or mental impairment." Dkt. 38 at 13. The ADA provides: "An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). In her Amended Complaint, Plaintiff still does not allege any facts that would establish that she had a record of a disability.

Finally, Plaintiff's Amended Complaint does not establish that she was regarded as having a disability. In its September 28, 2023 Memorandum Opinion and Order, the Court rejected Plaintiff's claim on this claim because she failed to adequately allege that Defendant viewed her as unable to work or viewed her as substantially limited in her ability to do her job as a result of any medical impairment. Dkt. 38 at 13. Even construing her Amended Complaint liberally, Plaintiff has not alleged any additional facts on this prong. Plaintiff's "regarded as" claim likewise fails. Plaintiff's Complaint does not allege that Defendant viewed Plaintiff as unable to work in the information technology industry generally. *See Akbar-Hussain v. ACCA, Inc.*, 2017 WL

13

176596, at *4 (E.D. Va. Jan. 17, 2017) (dismissing ADA claim where complaint did allege an awareness of "mental health issues" but failed to allege that employer "believed her bipolar disorder and ADHD prevented her from working"). Accordingly, here too, Plaintiff has not cured the defects identified in the September 28, 2023 Memorandum Opinion and Order.

Because Plaintiff has not remedied her Amended Complaint to sufficiently plead that she is a "qualified individual with a disability," the Court will dismiss Count I. The Court will also dismiss Counts II (failure to accommodate claim)[4] and Count IV (hostile work environment claim),[5] as the "former requires the Plaintiff to establish that she is within the ADA's protected class and the latter requires her to show that she had a disability, both of which she has failed to do." *Akbar-Hussain*, 2017 WL 176596, at *4.

###### iii. Retaliation (Count III)

In her Amended Complaint, Plaintiff asserts a claim for "[r]etaliation for complaining about discrimination resulting in deduction of compensation October 1, 2021." Dkt. 55-2 at 3. Defendant moves to dismiss Plaintiff's retaliation claim on two bases. First, they contend that Plaintiff failed to exhaust administrative remedies because she neither checked the retaliation box

---

[4] To survive a motion to dismiss for a failure to accommodate claim under the ADA, a plaintiff must sufficiently allege "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

[5] To survive a motion to dismiss for a hostile work environment claim under the ADA, a plaintiff must sufficiently allege "(1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Coleman v. Kettler Mgmt.*, 2022 WL 17585780, at *6 (E.D. Va. 2022) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001)).

on the EEOC charge nor did she mention retaliation in her EEOC narrative. Dkt. 58 at 13-14. Second, Defendant contends that, even if Plaintiff did exhaust administrative remedies, her claim should nonetheless be dismissed because Plaintiff fails to state a claim. *Id.*

With respect to exhaustion, this Court previously dismissed Plaintiff's retaliation claim for failure to exhaust because she failed to check the appropriate box and because the narrative did not put Defendant on notice that she was pursuing a retaliation claim. Dkt. 38 at 15-16. In fact, Plaintiff concedes that she did not check the retaliation on the EEOC Charge. Dkt. 15 at 14-15. The failure to exhaust is not a defect that can be remedied at this late date. Accordingly, Plaintiff's retaliation claim will be dismissed.[6]

### iv.   Interference (Count VI)

Finally, Plaintiff raises an interference claim in her Amended Complaint. While Plaintiff's interference claim in the Amended Complaint is difficult to decipher, in essence she alleges three separate instances of intimidation by Defendant. First, that Defendant rejected Plaintiff's portfolio after she reported abusive behavior to HR. Dkt. 55-2 at 5-6. Second, that Defendant forced use by Plaintiff of accrued vacation time and Defendant's excessive delay in acknowledging Plaintiff's timesheets. *Id.* at 6-7. Third, that Defendant failed to enforce its own policies concerning discrimination. *Id.* at 7-8. For the following reasons, the Court will dismiss Count VI of the Amended Complaint.

To establish an interference claim under the ADA, an employee must demonstrate "(1) she engaged in an activity that is statutorily protected by the ADA; (2) she was engaged in, or aided

---

[6] In the September 28, 2023 Memorandum Opinion and Order, the Court also held that Plaintiff failed to state a claim for retaliation. Dkt. 38 at 16-20. Although the Court will not address all the deficiencies of the retaliation claim, the Court finds that Plaintiff has still failed to state a claim in this regard.

15

or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate." *Sowers v. Bassett Furniture Indus., Inc.*, 2021 WL 276169, at *9 (W.D. Va. Jan. 27, 2021) (citing *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017). This standard has been reaffirmed by the Fourth Circuit. *See Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 171 (4th Cir. 2024) (citing *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545 (7th Cir. 2017) and *Brown v. City of Tucson*, 336 F.3d 1181 (9th Cir. 2003)).

As a threshold matter, Plaintiff has also failed to exhaust her ADA interference claim. *See Rollins v. Verizon Md., Inc.*, 2010 WL 4449361, at *5 (D. Md. Nov. 5, 2010) (dismissing ADA interference claim for failure to exhaust). Here, the EEOC Charge does not reference an ADA interference claim. Dkt. 1-1. Thus, the claim will be dismissed for failure to exhaust.

With respect to the rejection of Plaintiff's portfolio, the Court agrees that Plaintiff has failed to plausibly plead interference. Although the "statutory term 'interfere with' is broader than retaliation, and captures 'all practices which have the effect of interfering with the exercise of rights,' . . . it is not read 'so broad as to prohibit any action whatsoever that in any way hinders a member of a protected class.'" *Kelly*, 90 F.4th at 171 (quoting *Brown*, 336 F.3d at 1191-92). Plaintiff alleges that on August 10, 2021, a portfolio she submitted her to manager was "rejected" because she had not included the name of the prior client she had worked for in her submission. Dkt 55-3 at 11. As Defendant correctly notes, the temporary rejection of Plaintiff's work product is not a significant enough event to constitute interference, because Plaintiff was ultimately allowed to resubmit her work.

16

Plaintiff next contends that Defendant engaged in interference based upon a variety of actions by Defendant. Construing her claim liberally, Plaintiff contends that payments of her wages were delayed by Defendant, and she was forced to use accrued vacation time as a result, thereby constituting an interference with her prior request for accommodations. Dkt. 55-3. In her Amended Complaint, Plaintiff appears to put forth the following facts as indica of intimidation by Defendant:

- On July 26, 2021, four days before Plaintiff requested an accommodation, Plaintiff received a "Transition to Bench Memorandum" from Defendant. In her Amended Complaint, Plaintiff states she interpreted this Memorandum to mean that she "wouldn't be eligible for payroll until after [she] passed a panel and [] would be eligible for a client." Dkt. 55-3 at 8.

- On July 30, 2021, Plaintiff submitted a request for accommodation to Defendant. *Id.* at 12.

- In reliance on the Memorandum, Plaintiff did not submit a timesheet for July 26, 2021, until August 2, 2021. Thereafter, she was not paid for her work during that period. *Id.* at 13.

- On August 24, 2021, Plaintiff wrote to Defendant concerning her lack of payment and was told that her lack of payment was due to her failure to submit timesheets during the aforementioned period. *Id.*

- Plaintiff eventually requested, and was paid, for the hours between August 1, 2021 and August 23, 2021. Dkt 55-2 at 7. Plaintiff alleges that Defendant nonetheless failed to reimburse her for the week of July 26, 2021, and repeatedly failed to acknowledge this concern prior to her termination. *Id.*

Based upon these facts presented by Plaintiff in her Amended Complaint, the Transition to Bench Memorandum cannot reasonably be inferred to constitute interference with her accommodations request as it occurred prior to the request. It is axiomatic that an action cannot be because of a protected activity, where the action takes place before the protected activity. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (recognizing that the "actions that led to [plaintiff's] probation and termination began before her protected activity,

17

belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] complaints"). Furthermore, given that Plaintiff has affirmatively alleged that she did not submit a timesheet, Defendant correctly asserts there is no basis to infer: (i) that Defendant interfered with Plaintiff's rights; or (ii) that Defendant was motivated by discriminatory intent. Additionally, it is difficult to determine that Plaintiff has been injured where Plaintiff was ultimately paid. Dkt 55-2 at 7.

Finally, Plaintiff raises an interference claim based on Defendant's written policy. Dkt 55-2 at 7. The Court addressed this aspect of the interference claim in its September 28, 2023 Memorandum Opinion and Order. Dkt. 38 at 22. Specifically, the Court held: "As Defendant's accommodation policy is not contrary to the ADA, an interference claim based on that policy cannot proceed." *Id.* Plaintiff has not corrected this defect. Moreover, Plaintiff has failed to adequately identify facts supporting her claim as the scope of the claim is unclear. Plaintiff's Amended Complaint does not identify on what internal complaints Plaintiff relies.

## IV. CONCLUSION

In sum, the Court dismisses each of the claims asserted in the Amended Complaint because, even after amending, Plaintiff has failed to remedy the shortcomings identified by the Court in the Memorandum Opinion and Order and because Plaintiff continues to fail to plausibly state any claim. Although the Federal Rules of Procedure generally require that leave to amend be freely given, amendment is generally not permitted where there are "multiple fundamental defects," where "further amendment likely will be futile," and where there have been multiple opportunities to amend. *Brown v. Phylbeck*, 2019 WL 2745758, at *5 (E.D.N.C. July 1, 2019); *see also Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 715 (E.D. Va. Aug. 28, 2009) (same).

Given the multiple opportunities to amend and Plaintiff's failure to correct the deficiencies identified by the Court, the Court will dismiss this action with prejudice.[7]

For the reasons discussed above, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 57) is GRANTED; and it is

FURTHER ORDERED that the Amended Complaint (Dkt. 55) is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Plaintiff's Motion for Sur-Reply (Dkt. 67) is DENIED; and it is

FURTHER ORDERED that Plaintiff's Motion to Vacate (Dkt. 48) is DENIED; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to close this civil action.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Order and Opinion to counsel of record for Defendants and to Plaintiff, who is proceeding *pro se*.

It is SO ORDERED.

Alexandria, Virginia
March 5, 2025

/s/ 
Rossie D. Alston, Jr.
United States District Judge

---

[7] Dismissal with prejudice is appropriate even where Plaintiff has failed to exhaust her claims as the time to file an EEOC Charge with respect to those unexhausted claims has passed. *See Liggins v. G.A. & F.C. Wagman, Inc.*, 2019 WL 4039637, at *4 (W.D. Va. Aug. 27, 2019) (noting that a plaintiff has 300 days in which to file an EEOC charge and that dismissal with prejudice is appropriate where a plaintiff has failed to exhaust and the time to file has passed). Here, Plaintiff alleges conduct that generally occurred in 2021 and it is now well-beyond the 300-day lookback period.